Marshall, Ch. J.,
 

 delivered the opinion of the court. — The points made by the plaintiffs in this case, are, 1st. That the policy does really insure their joint property on board the ship Northern Liberties, so far as the same was at the time uncovered by prior assurances. 2d. That if the property be not insured at law, yet it was intended to be insured, and this court will relieve against the mistake in the agreement.
 

 1st. That the policy does really insure the joint property of Graves
 
 &
 
 
 *262
 
 Barnewall. The words are, “the President and Directors of the Boston Marine Insurance Company, do, by these presents, cause John Boonen Graves to be assured $10,000, on property on board the ship Northern Liberties, as property may appear.” These words, it is contended by the counsel for the plaintiffs, insure the joint property of Graves & Barnewall, so as to cover the interest of each.
 

 The operation of the words themselves, taken in their ordinary sense, would certainly not extend beyond the interest held by Graves in the cargo. The words “as property *may appear,” seem to restrict the general terms of the policy to the interest of the person named in it. Admitting this to be true, it is still contended, that the interest of each partner in the whole partnership stock is an insurable interest; and as it was ob viously the intention of Graves, to insure for his partner as well as for himself, the policy ought to receive a construction which will effect this intent. The reasoning in support of the power of each partner to insure the joint property, if certainly strong and well founded. But the doubt in this case is, not whether Graves could have insured the interest of his partner, but whether he has insured it.
 

 It is true, that Barnewall need not have been named in the policy ; but the contract ought to have been so expressed (since it is an open policy) as to show that the interest of some other person than Graves was secured, if such was to be the effect of the instrument. It is a good general principle*, that written agreements ought to be expounded by themselves. But if the same words are to be considered as insuring the interest of Graves only, or the interest of Graves
 
 &
 
 Barnewall, according to extrinsic circumstances, the certainty expected from a written agreement will be very much impaired. The interest of Barnewall, therefore, cannot be considered as insured by this-policy, under the power of one partner to insure the share of his copartner; If it is insured, it must be as the interest of Graves.
 

 Several cases have been stated, in which Graves might sustain a loss by the loss of Barnewall’s part of the cargo, and therefore, it has been contended that he may be indemnified against that risk, in a policy professing to cover .only his own interest. The case put is, that Graves might have paid for the whole cargo, and have retained a lien upon it for his reimbursement. But. in that case, his interest would not be the result of his character as a partner, but would be in the nature of a mortgage. The question would not be, generally, whether the interest of a copartner may be said to comprehend all the partnership effects, but whether a mortgagee, or other person having a lien upon property, may be said to have an interest in the whole of it. As-a c^m so bounded would rest, not on the general principles of partnership, but on the particular circumstances of the case, those circumstances ought to be made out, in order to entitle the plaintiffs to avail themiselves of the argument. Not being made out, they do not belong to the-case.
 

 If a suit at law had been brought on this policy, it would only have been brought in the name of Graves, and he must have averred property on board the vessel. He could only have been entitled to recover to the amount of property uninsured. Would it have been sufficient, under such an averment,, to have shown, that the interest of his partners and himself amounted to the sum he claimed, or if he had averred property in himself and another to that
 
 *263
 
 amount of $10,000, would such an averment have entitled him to a judgment for the whole sum. In ordinary transactions, the plaintiff would certainly fail in an attempt founded on similar principles.
 

 A policy, though construed liberally, is still a special contract, and under no rule for proceedings on a special contract, could the interest of a copartnership be given in evidence, on an averment of individual interest, nor an averment of the interest of a company be supported, by a special contract relating in its terms to the interest of an individual.
 

 But it is contended, that an insurable interest js distinct from interest, in the ordinary acceptation of the word ; and several cases have been cited in support of this doctrine. Those cases generally appear to be answered, by a distinction taken by the defendants’ counsel, between the interest and the power of a copartner. But the case of
 
 Page
 
 v.
 
 Fry,
 
 reported in 2 Bos.
 
 &
 
 Pul. 240, certainly countenances the doctrine maintained by the plaintiffs, and ought to be particularly considered. But before that case is adverted to, it may be proper to mention, what appeared to be the opinion of Judge Bullbk, in the case of
 
 Perchard
 
 v.
 
 Whitmore,
 
 reported in the same book, in page 155. In that case, it appears to have been considered as a clear principle, that if, in an action on a policy, and on an averment of interest in the plaintiffs, it should appear, that the plaintiffs and another were interested, the action would not be maintainable. That opinion would apply to the case at bar; but as the question *was not directly decided, and was the opinion of a single judge, it may be supposed to yield to the case of
 
 Page
 
 v.
 
 Fry,
 
 where it is said, that question came directly before the court.
 

 The case of
 
 Page
 
 v.
 
 Fry
 
 was an action brought by an agent, on a policy signed by himself, and in the declaration, he averred an interest in the whole cargo insured, in Messrs. Hyde & Hobbs. It appeared in evidence, that after the purchase of the cargo, and before the insurance was made, a house by the name of Hacks had taken an interest in it, and for this variance between the averment and the proof, the defendants moved for a nonsuit. It is worthy of remark, that no doubt was entertained of the right of the plaintiffs to recover the whole sum, had the declaration stated the truth of the case. And that the counsel in support of the action did not allege that the interest of Hacks was insured as the interest of Hyde
 
 &
 
 Hobbs, or that on an averment of a particular interest, a joint interest might be given in evidence ; but that the averment wa's immaterial, under the acts of parliament, and being alleged under a
 
 scilicet,
 
 would not vitiate. The invoices having been made out in the name of Hyde & Hobbs, who paid for the cargo, he also contended, that the
 
 primd facie
 
 right was in them, and that Hacks had only an equitable interest. The argument goes upon the admission that the variance, under the circumstances which attend the case at bar, would be fatal. The same remark applies to the argument in support of the nonsuit. This deserves consideration, since it certainly warrants an opinion, that previous to that case, the law was generally understood to require that the averment of interest in an action on a policy, should be supported by testimony corresponding with that interest, according to the general acceptation of the term.
 

 Lord Eldow certainly states his opinion in favor of the action, to be founded on the interest of the plaintiffs in the entirety of the cargo. But
 
 *264
 
 in examining tbat opinion, *it does not appear to be supported by the authorities he cites, and the words he uses in the conclusion, would seem to imply that, contrary to his reasoning, he paid some respect to the circumstances, under which Hacks had become concerned. “ I think,” says his lordship, “ the plaintiff had a sufficient interest in the entirety of this cargo, notwithstanding other persons had a beneficial interest in a part.” The word “ beneficial ” seems to imply something distinct from a legal interest, and to correspond with the terms equitable interest, which had been used by the plaintiffs’ counsel. The opinions of Justices Heath and Chambee seem to be founded on this being a valued policy, and on the plaintiff’s having such an interest as would entitle him to insure under the act of parliament, and that the substance of the averment was nothing more than that the plaintiffs had an interest in the cargo, which would satisfy the act. The opinion of Judge Rooke is accompanied with no explanation whatever. This case, even was the decision an authority, is too imperfectly reported, to be permitted to overthrow a system which was previously established.
 

 It is the opinion of the court, that, on the legal construction of this policy, John Boonen Graves is insured to the extent of his own interest in the cargo, but that the interest of his copartner is not insured. Were it otherwise, the remedy would be complete at law, and of consequence, the plaintiffs could not maintain their bill in a court of equity.
 

 '„ 2d.- It remains to inquire, whether, under the circumstances of the ease, a court of equity will relieve the plaintiffs against the mistake alleged, to exist in the contract, and extend the insurance to the whole partnership interest. That Graves intended to insure the whole, is proved in a manner which is perfectly satisfactory. That the company believed themselves to be insuring the property of Graves only, is probable. Certainly, such is the evidence in the cause. There is no ground for imputing to the company a knowledge that the policy did not correspond with the intentions of the insured.
 

 then, the relief which they ask should be granted to the plaintiffs, it must be on the principle, that the information laid before the insurance company was sufficient to apprise them of the fact, and to require that, on the principles of good faith, they should suggest to the agent of the plaintiffs the departure of their policy from the ancient form.
 

 This information is in writing, and is contained in the letter of the 5th of May, and in the representation of the risk which accompanied it. The letter must be considered as having been seen by the officers of the company ; but as it was shown, not for the purpose of commencing a contract, but of inquiring into the terms on which a contract might probably be made, it is reasonable to suppose, that the nature of the risk was the only subject of consideration, and that the question whether the property belonged to one or more persons, never occurred. A month elapsed before a second application was made, and as the description of the risk was again laid before the president, it could not be required from him, to retain in his mind a circumstance casually suggested in a letter seen so long before, to which circumstance there was nothing to direct his particular attention.
 

 It is, then, on the representation of the risk, and on the verbal communications of Andrew Sigourney, that the case must depend. The representation contains an averment that “ the ship and cargo really and truly
 
 *265
 
 belong to citizens- of tbe United States.” But as only a small part of the .cargo was insured by the Boston company, this averment contains no information that any other than John Boonen Graves was interested in the particular policy then to be entered into. In the letter, there is another expression which has been much relied on. It is, “ on this vessel’s cargo
 
 we
 
 want insurance.” This expression has been considered as sufficiently indi■cating that the application was made in behalf of more than one person ; and this expression has produced the principal difficulty of the case ; *but on reflection, it has been thought too ambiguous, to authorize a change in the legal import of a written contract.
 

 The description obviously relates to the whole cargo ; but the application for insurance was only for a part of it. If that application was made, in the name of Graves only, it was no unreasonable supposition, that the other parties concerned might be separately insured, and that the policy then required was designed to cover Graves only. That the application was so made, must be inferred from the circumstance, that the policy was so framed, at a time when there could be no motive for varying it from the insurance applied for; and that Sigourney does not allege himself to have made any communications to the president, indicating a wish to insure others than Graves.
 

 These grounds are too equivocal, to warrant the court in varying a written contract, in a case attended with the circumstances which appear in the present. The policy was in the possession of the agent for the plaintiffs, and ought to have been understood by him, before it was executed ; he retained it in his possession for several months, before a mistake was alleged. Under such circumstances, the infoi’mation given to the insurance company ought to be very clear, to justify a court of equity in conforming the policy to the intention of one of the parties, which was not communicated to the -other, until the
 
 loss
 
 had happened.
 

 Under the circumstances of the case, a court of equity cannot relieve against the mistake which has been committed; and as the remedy of the ■plaintiff, Graves, on the policy, to the extent of his interest, is complete at law, the decree of the circuit court, dismissing his bill, must be affirmed.
 

 Judgment affirmed.