HENRY F. PLAHTO, Respondent, v. THE MERCHANTS' AND MANUFACTURERS' INSURANCE COMPANY OF ST. LOUIS, Appellant.

1. *Insurance—Agency.*—An agent may effect an insurance in his own name for the benefit of the owner without giving the name of the owner of the goods, but the words of the policy must sufficiently indicate such intention. The word "agent" attached to the name of the person assured, imports that he is acting for an undisclosed principal; and parol evidence is admissible in such case to show for whose benefit the insurance is effected.

2. *Insurance — Open Policy.* — The terms of an open policy declared that the subject insured should "be specified by application, and mutually agreed upon and written on the policy." The secretary of an insurance company,

unless he has authority given him by the by-laws, has no authority to waive such endorsement on the policy. S. M. G., "agent," had an open policy with the above stipulation, and applied to the insurer for insurance upon goods for a voyage; the secretary of the insurance company made a memorandum upon his books of the application, but G. not having his policy with him, he was told by the secretary that he must bring his policy and have the proper entry made : the goods had been lost at the time of the application, and on the same day G. was notified by the secretary that the goods were not insured, and he subsequently refused to make the entry on the policy. *Held*, that, as the policy required the application to be endorsed upon the instrument, the insurance never attached to the goods, and that the owner could not recover.

### Appeal from St. Louis Circuit Court.

*Hill & Jewett*, for appellant.

This was not a question of waiver, but is an attempt to hold the company on a verbal insurance. This policy is a special open policy; nothing is insured under it till it is entered on the policy. When the plaintiff produces his policy only, he has got no case; the goods are not insured by it; and he then attempts to show by parol that the secretary insured his goods on a verbal contract, or in some other way than the one pointed out in the contract existing between Gray, as his agent, and the company. It is not a case where an officer of the company undertakes to waive some condition in a contract as to the insurance of the particular goods or property insured. There are no cases which go the length asked in this, that when the company have contracted with a man that they will insure his property in writing, the secretary may insure it verbally. The case of Daws v. N. B. Ins. Co., 7 Cow. 462, holds that an officer of a company cannot bind the company by doing what he is not authorized to do by the charter and by-laws of the company—1 Hoffm. Ch. R. 172–4.

In the case at bar, Plahto was no party to the contract when made. He would only become so, under this policy, by an insurance for him. The application is in writing; shows who the insurance was for, and cannot be contradicted; and plaintiff cannot recover on that application.

*Cline & Jamieson,* for respondents.

There was no evidence showing or tending to show that either plaintiff or defendant, or any of their agents, had any knowledge or suspicion of the loss prior to the insurance.

The second objection made to a recovery is on the ground that the risk was not entered on the policy. It was shown to be the custom of the company to enter the risk on their cargo book, and when the value of the shipment could be fully ascertained, to have the risk charged upon the policy book, which was often done at some future time. In this case, the risk was entered on the books of the company by their secretary, who requested the agent to bring in the open policy, and have this risk entered thereon. The policy does not say when the risk shall be endorsed upon it ; and if at the time it is received by the company, then the secretary had power to waive it, as it clearly falls within the scope of his authority. In this case, the proof is that he received the risk and waived the entry on the policy in the hands of Gray until some future time, when this and another risk could be entered—25 Barb. 189 ; 2 Dutcher, 268, 275. The object of entering the shipment on the policy, or on a policy book, is to indicate the fact of the intention to insure the goods under the policy. This can be done by the holder of the policy as well as the officers of the company ; or the insurance may be indicated by writing it across the bill of lading, which is often done. Any act on the part of the shipper which shows his design to have the cargo insured on an open policy, and which purpose is thus indicated before he gets any knowledge of the loss, is a good insurance. There can be no trouble on this point in this case, as the insurance was actually effected, and the entry made by the secretary of the defendant on it, as being an insurance under the open policy sued upon ; and if there was anything further required to complete the contract, it was expressly waived by the secretary of the company.

Defendant claims that this policy was issued to Gray alone, and that under it plaintiff could not support this suit ; and

that the words " agent," &c., gave the contract of insurance no enlarging operation, and hence that this suit could not be maintained either in the name of the plaintiff, because the contract was not made with him, nor in the name of Gray, for the reason that he had no insurable interest in the goods at the time of the loss, and cites Wise v. St. Louis Ins. Co., 23 Mo. 80. Here the policy is issued to Gray, agent, thereby clearly showing that some one else was covered by its provisions; that some one else was meant; that Gray was without interest, either in the contract or the subject of the risk. We are unable to reconcile some parts of the opinion of Judge Scott, in the above case, with the authorities he cites in its support. 1 Phillips on Ins. 210, relates to quite a different subject; and 1 Phil. § 409, is quite to the contrary; and in 8 Metc. 348, the Chief Justice, in delivering the opinion of the court, expressly states, that where the policy was intended to cover others than those named, extraneous evidence can be introduced to show who was meant to be covered by the policy. In this case, the proof shows clearly that Gray was the mere agent or broker, and that the plaintiff was the sole party in interest; and this can be shown by extraneous testimony—Tanner v. Commonw. Ins. Co., 18 Pick. 56; Jeff. Ins. Co. v. Cotheal, 7 Wend. 82. " If (says Buller, Justice,) one person makes a promise to another for the benefit of a third, that third may maintain an action upon it—3 Bos. & Pul. 149; per Bailey, J., Sargent v. Morris, 3 Barn. & Alderson, 281.

Why should the defence on this point be permitted to prevail? The goods were insured; the goods are lost by a peril insured against; the broker interposes no objection to the recovery, and the defendant does not show that it has any matter of offset against the agent which would be unavailing against his principal—1 Phil. Ins. 409; 18 Pick. 53; 20 id. 259; 5 id. 76; 1 Metc. 166; 2 Sumn. 471–80; 7 Wend. 72; 23 Mass. 83; Sto. Contr. 671; 2 Duer Ins. 10, 271, 277; R. C. 1855, p. 1217; 33 Mo. 417, 420; 12 Mass. 80.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff sues as the party insured, on a policy by which the defendant caused " S. M. Gray, agent," to be insured " in such sums on property from and to such places, and on board such vessels as shall be specified by application, and mutually agreed upon and written on this policy." It appears that S. M. Gray effects this policy as the agent of the plaintiff. The usual policy book was annexed to it, in which the declarations of the vessel's voyages and property insured were to be written under this clause. The goods, which are claimed to have been insured in this instance, were shipped by the plaintiff's agent on board the "Asa Wilgus," at St. Louis, consigned to the plaintiff, at Boonville, on Saturday, the first day of September, 1860. Early on the morning of Monday following, the vessel and cargo were lost in the Missouri river. About four o'clock in the afternoon of the same day, the agent made application at the office of the defendant for insurance on these goods. He had not brought the policy with him. The secretary entered the application on his cargo book, under the heading, " S. M. Gray, agent of the Great Western Dispatch Company," of which, it appears, Gray was also agent. The practice was to write up the insurances on policies of this kind and pay the premiums at the end of each month. There was evidence tending to show that the agent was reminded by the secretary, at the time, that he would have to bring in his policy and have the proper entry made in his policy book. A few minutes after the agent had left the office, the secretary, on taking up the evening newspaper, saw the announcement of the loss of the vessel and cargo. This fact was unknown to either party at the time of the previous transaction. The secretary immediately addressed a note to the agent, informing him that the goods were not insured, and, when afterwards the agent applied, with the policy, to have the goods entered thereon, the officer refused to do so.

The court instructed the jury for the plaintiff, as follows:

1. That the secretary of the company, within the scope of his general authority, had power to waive the conditions of the policy as to the endorsement of goods on the policy; and if he did so waive, the company are holden, though the goods were not insured.

2. That, as the policy was issued to S. M. Gray, " agent," the word agent in the policy is a sufficient indication that others are interested in the goods, to justify the admission of parol evidence to prove property in the goods in the plaintiff; and if the plaintiff owned the goods, an action on the policy may be maintained in his name.

Instructions were refused for the defendant to the effect that, if the loss were known to the agent at the time of the application, or if the application was understood to be made by him as agent of the Great Western Dispatch Company, or if the goods were not endorsed on the policy, and there was no waiver of the terms and conditions of the policy by the secretary, with the knowledge and assent of the board of directors, the defendant was not liable; and further, that on the face of the policy it did not appear that the insurance was made for the benefit of the owner, whoever he might be, so as to enable him to sue in his own name, and that parol evidence was not admissible to enlarge or vary the terms of the policy, and that therefore the plaintiff was not entitled to recover. The court, sitting as a jury, found a verdict for the plaintiff for $3,239.31, and the case comes up by appeal.

The first question is, whether the plaintiff was the party insured, so that he could sue on the policy. This point may be considered as settled in the affirmative, by an almost uniform course of authority. The plaintiff must have an interest in the policy as well as an interest in the goods insured. An insurance may be effected by an agent in his own name, for the benefit of a party interested as owner, without describing his name, but there must be words in the policy which sufficiently indicate such an intention; the most usual words are, " for whom it may concern," or " for the owners." The effect of the phrases is merely to show that the agent is

17—VOL. XXXVIII.

effecting the insurance, not for himself, but for some other party, who is not named. The words " S. M. Gray, agent," must have the same effect; they mean something more than a mere description of the agent's own person. They import that he is acting in the character of agent for some undisclosed principal; such must be the understanding of the parties. Parol evidence is admissible in such case to show the identity of the party intended to be insured, and to prove his interest in the property insured. It does not in any way change or contradict the terms of the written instrument. It only develops and explains a latent ambiguity—Wise v. Mar. Ins. Co., 23 Mo. 80 ; 1 Arnold Ins. 25, n. 1 ; 2 Duer Ins. 40, 10 ; Rider v. Ocean Ins. Co., 20 Pick. 259 ; Jeff. Ins. Co. v. Cotheal, 7 Wend. 82; Davis v. Boardman, 12 Mass. 83 ; Farrow v. Commonw. Ins. Co., 18 Pick. 56. But it is otherwise where there are no words in the policy to indicate any other party than the one named as making the insurance, and such was the case in Wise v. Mar. Ins. Co., 23 Mo. 80 ; Graves v. Bost. Mar. Ins. Co., 2 Cranch, 419; Finney v. Bedf. Com. Ins. Co., 8 Metc. 348. We think that the instruction that was given on this point was correct.

The more important and difficult question is, whether there was any written contract of insurance—any policy at all on these goods. It would seem to be a settled principle that a policy of insurance must be in writing—1 Arn. Ins. 17, n. 1, 50 ; 1 Duer Ins. 60 ; 1 Phil. Ins. 8 ; 3 Kent Com., 7th ed., 321 n. e. The same doctrine seems to have been admitted, though the point was not decided, in Smith v. Odin, 4 Yeates, 468. It is the universal commercial usage, confirmed by the general tenor of the authorities, that this contract shall be in writing, and it has been decided that such a thing as a verbal policy of insurance was unknown to the law—Cockerel v. Cin. Ins. Co., 16 Ohio, 148. If there were any insurance on these goods, it must have been effected by the terms of this written policy, or in pursuance thereof. The insurers have signed no other contract but this, but the policy itself leaves the voyages, the vessels, and

the property which is to be the subject of the insurance, to be declared in future, in the manner therein provided : that is to say, these things " shall be specified by application, and mutually agreed upon, and written on the policy." This was not actually done here at all.

The first instruction given for the plaintiff supposes that the secretary had power to waive this endorsement in writing on the policy, and that he may have done so. There is nothing in the evidence that goes to prove the existence of any such authority. Merely as secretary, he had no power to waive any part of the written contract without the knowledge or assent of the corporation, or of the board of directors, or other officers having power to make contracts of insurance in the name of the company. It has been held that even the president of an insurance company had no power to waive the provisions of a policy which required the production of preliminary proofs of loss—Dawes v. N. B. Ins. Co., 7 Cow. 462. And where the secretary or other officer of the corporation is authorized by the charter ordinance and by-laws to make a policy or other contract in writing, it must be done in the manner prescribed in the by-laws before it can become the act of the company ; and the assent of the company to the formation or dissolution of a policy cannot be manifested or proved by parol—Head v. Prov. Ins. Co., 2 Cranch, 168. So, where the by-laws required other insurances to be mentioned in the policy, and it was not done, the policy was held to be void, and parol evidence was not admitted to supply the defect—Barrett v. Un. Mut. Ins. Co., 7 Cush. 175. Whether this proceeding is to be regarded as an attempt to waive a part of the written policy, or to supply an omission by parol, or to substitute other evidence of the contract than that which was agreed upon, and expressly required by the policy itself, in either case it was equally inadmissible.

The contract of the insurers is complete when they have signed the policy ; but where the policy leaves the declaration of interest, or the designation of the vessel, the voyage,

or the property insured, entirely open, to be afterwards made, a mere power is conferred on the assured, and the exercise of it need not necessarily be in writing—1 Arnold Ins. 53. A general power is not conferred by this policy; but the authority which is given, is in terms restricted to a mutual agreement, and a writing to be endorsed on the policy. The declaration or application of the assured is not to be absolute; it must be mutually agreed upon before it can be endorsed, and it must be endorsed on the policy before the declaration will be complete or the risk attach. In Robinson v. Tournay, 3 Camp. 157, the power to make a declaration of interest was left open and general. Lord Ellenborough was of the opinion that in such case the declaration need not have the signature or the assent of the insurer. He observed that the contract was complete when the underwriters had signed the policy; that the declaration of interest was the mere exercise of a power conferred on the assured, and that it was generally put upon the policy for convenience, but there was no necessity for its being in writing; and he allowed a mistake in the name of the ship to be corrected by parol evidence, showing on what ship the goods were laden. In Harmon v. Kingston, 3 Camp. 150, the same learned judge held that a declaration of this kind, where the policy was in general terms, necessarily imported two parties—the person who makes it and the person to whom it is made—and that if it had been written in the policy, so that the party could not recede, that might have been sufficient. He allowed that the declaration, in such a case, was no part of the contract, and did not require any further assent of the assurers, but that it must be communicated in such manner that the assured could not recede from it; and it was held that the declaration of value must have been made before the loss, in order to change an open into a valued policy. If this policy had been expressed in the same general terms, the declaration that was made here might have been sufficient. But the power given in this policy is not general, but restricted. It requires not only a declaration, but a mutual

agreement, and an endorsement in writing on the policy. This is a part of the written contract. From all that was done here, the assured might himself have receded. Had the goods arrived safely at Boonville, and the assured had then refused to make the endorsement on the policy and pay the premium, it is not apparent how the premium could have been recovered from him on a risk which, by the express terms of the policy, had never attached. If the application were accepted, and there was a mutual understanding that the endorsement should be made at a future day, upon a premium to be paid in the usual manner, it might amount to such a contract that an action at law would lie for special damages for a breach of it. There is authority to the effect that such an action may be maintained on a breach of contract in refusing to execute a policy of insurance according to agreement—1 Duer Ins. 66, III. But until this endorsement should be made, such agreement could not become any part of the contract of insurance contained in the policy. The acknowledgment of the receipt of the premium contained in the policy, and the usages as to the mode of settling the premiums, might be enough to remove all ground of objection on the score of the premium not having been in fact paid. The application may be deemed to have been sufficient. The entry of it in the cargo book of the office may be admissible to show an acceptance of the application, and a mutual agreement, so far as such agreement was necessary to authorize an endorsement in writing to be made on the policy, by the secretary, of the property therein mentioned, when the policy should be produced for the purpose. It may be conceded that it was contemplated by the policy, as signed, that the secretary should have this power.

If the endorsement had been in fact made even after the loss occurred, and before it came to the knowledge of either party, it nevertheless would have been valid and binding— Halleck v. Ins. Co., 2 Dutcher, 268 ; but it was not done. The result necessarily is, that there was no contract of insurance ; no policy on these goods within the terms of the

written instrument. The power given by the policy had never been exercised at all in the manner therein required ; and the company had signed no other contract of insurance on these goods. It does not appear that the secretary had any power to waive the written policy, or to make a contract of insurance in any other than the usual mode. We find no evidence in the record that he did in fact undertake to make any such waiver. It merely amounts to this, (which often happens,) that the party, by want of proper diligence and attention, had failed to get done what was necessary to be done, in order to make a binding contract.

We think the first instruction given for the plaintiff was eroneous. The second instruction which was refused for the defendant should have been given. In the refusal of the rest we see no material error.

Judgment reversed and the cause remanded. Judge Wagner concurs ; Judge Lovelace absent.