THE MOUND CITY MUTUAL FIRE AND MARINE INSURANCE COMPANY, Respondent, v. PETER CURRAN, Appellant.

1. *Fire Insurance Policy — Variation, effect of.* — The charter of a mutual fire insurance company contained a provision that "if property insured by said company shall be alienated by sale or otherwise, the policy issued thereon shall be void, and shall be surrendered to said company to be canceled." Property so insured was sold, and the holder of the policy agreed with the secretary of the company that said policy should be so altered as to cover other property of the assured differently situated; and this agreement was indorsed on the policy and signed by the secretary. *It seems* that such provision avoided the policy utterly, not only as to the property originally insured, but as to that so agreed to be substituted in its place.

2. *Fire Insurance Policy — Premium Note, consideration of — Power of Insured to recover loss upon Policy.* — Such a policy is utterly void independently of this provision, for neither the insured nor the alienee of the insured could have recovered a loss upon it. After the alienation the consideration of the note would fail, and the note itself would become void also.

3. *Fire Insurance — Written Application — Authority of Secretary alone to make Contract of Insurance.* — Where the charter and by-laws of an insurance company provided that policies should be issued only upon a written application, making representation of all material circumstances affecting the risk, and should be signed by the president and secretary, such indorsement of the secretary was void. He had no authority to make a policy or contract of insurance otherwise than in the manner prescribed in the charter and by-laws. Even though the president had signed the original policy, and the same instrument was again issued by the secretary as a blank newly filled up, upon verbal application, this would have been equally without authority and a fraud upon the company.

## Appeal from St. Louis Circuit Court.

Plaintiff's charter contained the following provisions :

" Sec. 9. That in all cases where real or personal property insured by said company shall become alienated by sale, or change in partnership or ownership, or otherwise, the policies issued thereon shall be void, and shall be surrendered to said company to be canceled ; and said company shall not be liable for any loss or damage which may happen to any property after such alienation as aforesaid, unless the policies issued thereon shall have been duly assigned or confirmed, by consent of the directors, to the actual owner thereof, previous to such loss or damage ; and no policy issued by said company shall be deemed to have been duly assigned or confirmed, unless the consent of the directors to such assignment or confirmation is certified on such policy by the secretary of said company.

" Sec. 16. When any house or building shall be alienated by sale or otherwise, the policy thereon shall be void, and be surrendered to the directors of said company to be canceled ; and upon such surrender the assured shall be entitled to receive his, her, or their deposit note, upon the payment of his, her, or their proportion of all losses and expenses that have occurred prior to such surrender : *Provided,* however, that the grantee or alienee having the policy assigned to him may have the same ratified and confirmed to him, her, or them, for his, her, or their proper use and benefit, upon application to the directors, and with their consent.

" Sec. 12. If any member, his heirs, executors, administrators, or assigns, shall neglect or refuse the payment of any assessment

duly ordered by the directors of said company for the term of thirty days after the same shall have become payable, agreeable to public notice given as aforesaid, the party so in default shall be excluded and debarred, shall lose all benefits and advantage of his, her, or their insurance or insurances, respectively, for and during the term of such default or non-payment, and notwithstanding shall be liable and obliged to pay all assessments that shall be made during the continuance of his, her, or their policies of insurance, and the directors may sue and recover the whole amount of his, her, or their deposit note or notes, with cost of suit.

" Sec. 14. Said company may make insurance for any term not less than one month nor more than ten years; and for the convenience of shippers may issue open policies, as is usual in other insurance companies; and any policy of insurance issued by said company, signed by the president and countersigned by the secretary, shall be deemed valid and binding on said company."

Appellant, on the 5th day of March, 1860, insured certain property with the respondent, for the term of six years, and gave his premium note, in the sum of $180, for the payment of the assessments thereon. On the 12th day of February, 1862, appellant sold the said property, and the alienee declined to accept an assignment of the policy. On the 14th of February, 1862, appellant, to avoid the expense of a new policy, made a verbal application to the respondent's secretary to have the said policy so changed as to cover other property in another part of the city belonging to appellant. In compliance with this application the secretary agreed to so alter the policy, which agreement was evidenced by the following indorsement on the policy:

"St. Louis, February 14, 1862.

"It is agreed that from and after this date this policy cover the —— story brick building erected by the assured on the southwest corner of Eleventh street and Cass avenue, block numbered 588, in the sum of two thousand dollars, the property mentioned in the policy having been sold. It is also agreed that as the building now covered by this policy is to be fitted up as a distillery, when so fitted up it shall be surveyed, and the rate then agreed on shall be paid. Payment of cash assessment to be paid to make this policy valid.

"DAVID H. BISHOP, Secretary."

Appellant, in consideration of this agreement, permitted the premium note to remain in the hands of the company as premium

· for this insurance ; and afterward, in consideration of additional risk and increased rate of insurance, gave another premium note for $435.

Appellant paid all assessments on both notes from the time they were given until the last one, ordered shortly before his policy by its terms expired. This he refused to pay, and respondent brought suit under the twelfth section of the charter above quoted.

*John W. Moore,* for appellant.

I. At the instant of the sale this policy was absolutely voided by the terms of respondent's charter. The assignment of the policy to Curran's grantee was the only way in which the policy so voided could be continued as a valid and binding policy of insurance. (Sess. Acts 1855, p. 96, § 9.)

II. The note of $180 ceased to be a legal demand in the hands of the company, because no longer subject to assessments. (8 Blackf., Ind., 50, 150.) While it may be that under ordinary circumstances a party to a contract cannot avoid it by his own act, yet when forfeiture is, by the contract, the expressly declared incident of any violation of its terms, then this is the law of the contract, and by it the parties must be governed. (Keenan v. Mo. St. Ins. Co., and Ryder v. Mo. St. Ins. Co., 12 Iowa, 126 ; McCullough v. Ind. Mut. Ins. Co., 8 Blackf., Ind., 50, 150 ; 3 Hill, 508 ; Frost v. Saratoga Mut. Ins. Co., 5 Den. 156-7 ; 1 Phil. on Ins. § 87, and cases cited in notes.)

III. The writing of Feb. 14, 1862, not having the formalities of an original instrument, nor being executed in the mode prescribed in section 14 of respondent's charter, was not a valid, binding policy of insurance upon the property on Eleventh street and Cass avenue. It is evidently nothing more than a declaration of the terms upon which the company was willing to insure. (Plahto v. M. & M. Ins. Co., 38 Mo. 248 ; Ang. & Ames on Corp., cases cited, ed. 1858, p. 291–2 ; 6 Exch. 137 ; 11 C. B. 928 ; 16 Q. B. 290 ; 9 Exch. 457.) The Plahto case settles a part of this fallacy, and affirms the well-settled rule of law that the charter is an enabling act giving the company all the powers it possesses ; and that when there is a particular mode expressed

for contracting, that mode must be strictly followed, or it is no more a contract than if the company had no existence. (Ang. & Ames on Corp. 291; 11 C. B. 926–7.) When the directors of a company do acts in violation of their deed, in a matter in which they have no authority, such acts are altogether void. (31 Eng. L. & Eq. 57.)

IV. The payment of assessments by appellant after the alienation does not estop appellant from denying the validity of the charter and the consideration for the premium notes. (35 N. H. 328; 9 Cush. 140; 7 Hill, 49; 16 Barb. 254.)

V. No power is vested in the secretary by the policy or charter, or proven as custom or an irregularity adopted by the company, to substitute one risk for another, even when the policy is in force, much less by such an indorsement when the policy was null and void at the time of such attempted substitution. The subject matter of the risk is of more importance than the " moral hazard," and no change can be made save by an instrument in form, usual mode, etc.

*T. A. & H. M. Post*, for respondent.

I. The alienation of property originally insured did not, *ipso facto*, release defendant from his subsequent obligation on the premium note or the assessments based upon it.

The principal end aimed at by sections 9 and 16 of plaintiff's charter, providing that policies of insurance should not be alienated without the consent of the insurers and certain prescribed formalities, was to establish a safeguard against the practices of unknown and unprincipled men. The contract is one of personal indemnity, and is founded mainly in a reliance upon the character of the insured. (Ang. on Ins. §§ 1, 194, 200; Tillon v. Kingston Ins. Co., 7 Barb. 574.) This end was accomplished by the original contract of insurance. The party insured continued the same.

II. Sections 9 and 16, in case of alienation, make the forfeiture, if the insurers so elect, conditional upon surrender of the policy for cancellation by the insured.

III. Even assuming that such alienation avoided the policy,

defendant continued liable upon his deposit note until the surren-
der thereof. The policy and premium note are independent con-
tracts. The former is not the consideration of the latter. Mutual
insurance companies are *quasi* partnerships. The premium notes
are their capital. The standing and credit of these companies
and their capacity to meet losses depend upon their power to
collect assessments upon them. Hence, a definite and sharply-
defined rule by which to determine who are liable, and to what
extent, upon their notes, lies at the foundation of their exist-
ence. They have fixed upon such a rule, viz., the surrender of the
policy. And this is a special covenant in the articles of agreement
between the partners. The insured continues a member of the
company and bound by his agreement for the period for which he
was originally insured, except in case of such surrender. (Hyatt
v. Waite, 37 Barb. 39, 421 ; Ind. Mut. Ins. Co. v. Coquilard, 2
Cart., Ind., 646 ; Hunting v. Beecher, 30 Barb. 580 ; New Eng.
Mut. Ins. Co. v. Belknap, 9 Cush. 140 ; New Eng. Mut. Ins.
Co. v. Butler, 34 Me. 454 ; Neely v. On. Mut. Ins. Co., 7 Hill,
51 ; McCullough v. Ind. Mut. Fire Ins. Co., 8 Blackf. 54.)

IV. The indorsement on the policy, signed by the secretary,
made it a good and valid policy as to the new property. It was,
therefore, a good continuing consideration for the first note.
There is no provision in the charter or by-laws requiring the
signature of both president and secretary to such indorsement.
Section 14 refers to the original policy, which was thus signed.
Alterations inserted in a policy by the underwriters, without
any new signature, will be valid if assented to by the insured.
(Trustees First Bapt. Ch. v. Brooklyn Fire Ins. Co., 19 N. Y.
310 ; 1 Phil. on Ins. § 110 ; Safford v. Wycoff, 4 Hill, 457 ;
Warren v. Ocean Ins. Co., 16 Me. 439.) The acceptance of
the person of the assured had been accomplished by the signa-
tures of these officers to the original policy, and the assent of the
company was to be presumed from the signature of the secretary
to the indorsement. (New Eng. Ins. Co. v. DeWolf, 8 Pick.
62–3 ; Bank U. S. v. Dandridge, 12 Wheat. 81, 88 ; Ang. &
Ames on Corp. 328.)

V. The action of plaintiff, in levying and collecting assessments

on said notes after the indorsement on the policy, cured all irregularities, if any existed, in the alteration of the policy, and rendered it a valid contract and a good consideration for the notes by establishing consent and mutuality of consideration. (Keenan v. Mo. St. Mut. Ins. Co., 12 Iowa, 134 ; Frost v. Saratoga Ins. Co., 5 Denio, 156–7.)

VI. Defendant, by his action in giving a new note and paying assessments on both notes after the alteration of the policy, estopped himself from denying the validity of the consideration for the notes. Such acts were admissions of his own liability, and were promises of payment; and every payment made was an admission on his part of the validity of the consideration for the notes. These admissions induced the plaintiff to continue the policy in force, and to grant new insurance, for which they would unquestionably have been liable. (1 Phil. on Ev. 453 ; Greenl. on Ev. p. 272, § 207 ; Bargate v. Shortridge, Eng. L. & Eq. R. 57, 258 ; Frost v. Saratoga Ins. Co., 5 Denio, 156–7.)

The case of Plahto v. The Merchants' and Manufacturers' Ins. Co., 38 Mo. 248, turns upon a different question. In that case the policy was an open one, and the goods insured were not indorsed upon or written in it at all. It was strictly a parol, a mere verbal contract, and was so regarded by the court. The court held that a contract of insurance must be in writing, and that an omission to make it in writing was fatal. The effect of the signature of the secretary alone does not come in question.

HOLMES, Judge, delivered the opinion of the court.

The plaintiff brings this action upon certain premium notes. The property insured in the policy had been alienated without an assignment of the policy. The defendant desiring to be insured on other property situated in another part of the city, the secretary of the company made an indorsement on this policy to the effect that it should cover that property in the sum of two thousand dollars, and that when the building should be fitted up for the purposes of a distillery an increased rate of premium should then be agreed upon and paid. It was signed by the secretary only. An additional note was afterward given for the increased rate

Mound City Mut. Fire & Marine Ins. Co. v. Curran.

of premium. The defendant continued to pay assessments upon these notes up to the last one due before the time expired, and then refused to pay any more; and for this the plaintiff sues.

There was an express provision in the charter and policy that it should be void if the property should be alienated without an assignment of the policy with it, by consent of the directors, certified by the secretary. This policy was utterly void independently of this provision, for neither the assured nor the alienee of the property insured could have recovered a loss upon it. The premium note might be valid until all assessments had been paid, up to the time of the alienation; but after that the consideration would fail, and it would become void also. (Keenan v. Mo. State Mut. Ins. Co., 12 Iowa, 126; 7 Hill, 49; Atlantic Ins. Co. v. Goodall, 35 N. H. 328.)

There was no new policy at all. Whether considered as a new policy or as an agreement for a policy, the indorsement was absolutely void. It appears that both the secretary and the defendant understood and intended it for a new policy, or rather supposed it would be a valid insurance and avoid the expense of a new policy and a stamp. The charter and by-laws provided that policies should be issued only upon a written application, making representation of all material circumstances affecting the risk, and should be signed by the president and secretary. The secretary had no authority to make a policy or contract of insurance otherwise than in the manner prescribed in the charter and by-laws. (Plahto v. Merchants' and Manufacturers' Ins. Co., 38 Mo. 255.) It might be urged that the president had signed the original policy, and that the same instrument was again issued by the secretary, as a blank newly filled up, upon the new verbal application. This would have been equally without authority, and a fraud upon the company. It was intentionally issued without a stamp, and this was a fraud upon the revenue. The premium note given upon such a transaction must be deemed to have been wholly without any valuable consideration, and void also. The company has received assessments upon these notes, both destitute of any valuable consideration, during nearly the whole period of the supposed insurance, upon a policy on which the defendant

could never have recovered a loss against them, and they now seek to enforce this demand against him. Neither law nor justice can uphold it.

We are of the opinion that the instructions given for the plaintiff were both erroneous.

Judgment reversed and the cause remanded. The other judges concur.