## ST. PAUL FIRE & MARINE INS. CO. v. SCHEUER et al.

(Circuit Court of Appeals, Fifth Circuit. March 18, 1924.)

No. 4232.

1. **Insurance ⬤=282(3)—Clause that policy should be void if insured were other than unconditional and sole owners held not abrogated.**

Under clause that, unless otherwise provided, policy shall be void if interest of insured is other than unconditional and sole ownership, it is not "otherwise provided" because insured are designated as trustees for certain named beneficiaries, but the effect is the same as though policy was directly in favor of the beneficiaries, and the clause is effective unless they, or the trustees for them, are unconditional and sole owners of the property insured.

2. **Trusts ⬤=17, 18(2)—Trust in personal property may be created by parol agreement.**

Under the law of Florida a trust in personal property may be created wholly or in part by oral agreement.

3. **Insurance ⬤=503—Contract is one of indemnity.**

Insurance policies are contracts of indemnity only, and where the insured are trustees for creditors they can recover only to the extent of their interest as trustees in the property destroyed.

In Error to the District Court of the United States for the Northern District of Florida; William B. Sheppard, Judge.

Action at law by M. Scheuer and C. W. Cobb, trustees, and others, against the St. Paul Fire & Marine Insurance Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. E. D. Yonge, of Pensacola, Fla., and Daniel MacDougald, of Atlanta, Ga. (Spalding, MacDougald & Sibley, of Atlanta, Ga., Carter & Yonge, of Pensacola, Fla., and McGeachy & Lewis, of Milton, Fla., on the brief), for plaintiff in error.

W. H. Watson and Samuel Pasco, Jr., both of Pensacola, Fla. (W. W. Clark, of Milton, Fla., on the brief), for defendants in error.

Before WALKER and BRYAN, Circuit Judges, and SIBLEY, District Judge.

BRYAN, Circuit Judge. This is a suit on two fire insurance policies issued upon a stock of goods located in a store at Milton, Fla. The policies were attached to the declaration, which in the usual and statutory form alleges loss by fire, and also contains the additional allegation that after the fire it was stipulated between the plaintiffs, on the one hand, and the defendant and other insurance companies, which had issued policies on the same stock of goods, on the other, that the amount of loss and the liability thereon, in the event the insurance companies were liable, should be fixed at $25,000, and that under the terms of the policies and the said stipulation the defendant became liable to the plaintiffs in the sum of $10,714.29.

[1] The policies are identical, except that one is for $10,000 and the other for $5,000, and they insure M. Scheuer and C. W. Cobb, trustees for Scheuer, Wise & Co., Harry Scheuer, J. B. Kleinhauser, C. W. Cobb, and S. N. Cox. Each of them contains the following provision:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership."

The defendant filed two sets of pleas: The first to the effect that the plaintiffs were not, either at the time the policies were issued or at the time of the fire, unconditional and sole owners, but that one H. S. Bates and his wife were either the sole or part owners of the stock of goods insured; and the second set to the effect that the interest of the plaintiffs was that of creditors, that they held the legal title to the stock of goods to secure the payment of debts due to them, and that the aggregate amount of such debts, at the time of the fire and at the time of the trial, was less than the maximum amount of defendant's liability under the policies. The court sustained a demurrer to all the first set of pleas except two, and in its charge to the jury withdrew from their consideration these two pleas, and also the entire second set of pleas. The case was submitted to the jury upon other issues which it is not material to state.

The stock of goods insured formerly was the property of the Bates Drygoods Company, a corporation. That corporation was adjudicated a bankrupt, and on August 13, 1921, the trustees in bankruptcy sold the stock of goods to one Rutherford for $25,100, who on the same day sold it to M. Scheuer. Again on the same day M. Scheuer and C. W. Cobb executed a declaration of trust, which recites that they had procured the legal title as trustees for the following creditors: C. W. Cobb, J. B. Kleinhauser, H. Scheuer, and Scheuer, Wise & Co. to the extent of $5,000 each, and S. N. Cox to the extent of $2,000—and provides that

they will employ H. S. Bates, president of the bankrupt corporation, as their agent to sell the stock of goods at retail, and out of the proceeds repay said sums of money to the beneficiaries of the trust. This instrument is silent as to what should be done thereafter with the trust property, which M. Scheuer estimated was worth $70,000; but other evidence supports the inference that the trustees, M. Scheuer and Cobb, were to receive some compensation, and then were to convey the title to Bates. The several amounts mentioned in the declaration of trust were advanced in pursuance of a plan formed before the stock of goods was sold by the trustees in bankruptcy. On August 9, in a letter to Kleinhauser, Scheuer stated that he would hold the title in his name until Bates should pay the purchase price. Bates was instrumental in inducing Kleinhauser to contribute, or be responsible for, $5,000. Bates' wife was given a receipt for $5,000, to be returned after all other indebtedness had been paid. After the fire, the trustees, Scheuer and Cobb, assigned all their right and title to Bates, who agreed to pay certain debts, including compensation to the trustees for their services. Bates remained all the time in actual possession.

January 29, 1922, the goods were damaged by fire, and on February 24 following an adjuster, acting for the defendant and other insurance companies, entered into a nonwaiver agreement with the plaintiffs, in which it is provided that any action taken or any information received by the adjuster should not affect the terms, conditions, or requirements of the policies. The intent of the agreement is stated to be to preserve all the rights of the parties, and to permit an investigation of the claim and the determination of the amount of loss without regard to the liability of the insurance companies, and without prejudice to any rights or defenses which they might have. On the same day the adjuster agreed with the plaintiffs as follows:

"Pursuant to the within nonwaiver agreement, if it is determined that liability exists on the part of the insurance companies for the loss by fire on January 29, 1922, to the property insured by the said insurance companies, then that liability and the net amount due by said companies to the said trustees is hereby understood and agreed to be the sum of $26,500."

The adjuster made a report to the defendant of the agreements he had entered into with the plaintiffs, and, though some question is made as to the adjuster's authority, his acts appear to have been acquisced in and ratified, and are therefore to be considered binding upon the defendant.

The defendant offered to prove that the amounts advanced to purchase the stock of goods had been repaid to all the beneficiaries mentioned in the declaration of trust except S. N. Cox, and that at the time of the fire, as well as of the trial, the outstanding indebtedness to the plaintiffs was much less than defendant's proportionate share of the maximum loss as fixed by the adjuster's agreement. But the court, upon objection by the plaintiffs, rejected the offer of proof, and the defendant excepted. The jury found for the plaintiffs, and judgment was entered for the full amount sued for, which the defendant concedes would be correct if the plaintiffs were sole and unconditional owners.

The plaintiffs do not question the validity of the clause in the policies requiring unconditional and sole ownership. Their contention in support of the order sustaining the demurrer is that, where the insured is designated as trustee, it is "otherwise provided" in a manner authorized, and that the clause relied on by the defendant is in effect written out of the contract of insurance, because the designation necessarily implies that the insured was not the unconditional and sole owner. Where it appears that the insured is acting in a representative capacity for undisclosed beneficiaries, the rule invoked by the plaintiffs is applicable. Such a case is that of Hagan v. Scottish Insurance Co., 186 U. S. 423, 22 Sup. Ct. 862, 46 L. Ed. 1229, where the insurance was issued to "Peter Hagan & Co. for account of whom it may concern." But in this case the beneficiaries are named, and the implication is that there are no other beneficiaries. The only reason for naming the trustees is that they held the legal title; but the insurance is not merely of the legal title, but of the entire ownership. The case is not different than it would have been if no trustee had been named and the insurance had been in favor of the beneficiaries only. We are of the opinion therefore that it was error to sustain the demurrer.

It is suggested that the error was harmless, since the evidence discloses that the trustees had no enforceable contract against Bates, and that therefore he was merely an optionee. The defendant need not have introduced any evidence of ownership after its pleas were overruled. However, the evidence which was offered is sufficient to support the inference that Bates had an enforceable interest. He was in possession and took an active part in procuring the purchase of the property by the trustees, who actually transferred whatever title they had to him. What was actually done is persuasive evidence of what the parties had agreed to do. The evidence also indicated that Mrs. Bates had an interest. The trustees obligated themselves in writing to pay back her contribution of $5,000 after all their other indebtedness had been paid.

[2] On the whole, the evidence shows that there were two trust agreements, one in writing, for the benefit of some of those who advanced parts of the purchase price, and the other oral, by which the title was held in trust for Bates. It is not essential in Florida that an express trust of personal property be evidenced by a written instrument. Such a trust may be proved wholly or in part by oral agreement. Bay Biscayne Co. v. Baile, 73 Fla. 1120, 75 South. 860. We are therefore of opinion that the error was not harmless.

[3] On the face of the policies it does not appear that the defendant waived or is estopped to invoke the requirement of unconditional and sole ownership. If it shall appear from the evidence on another trial that the plaintiffs were the unconditional and sole owners, then they would be entitled to recover from the defendant its proportionate share of the amount stated in the adjuster's agreement. If, on the other hand, the plaintiffs are shown not to have been the unconditional and sole owners, and if it also appears that defendant has waived or is estopped to rely upon this clause regarding unconditional and sole ownership, then the plaintiffs may recover the amount of their actual loss, not exceeding the maximum amount of defendant's liability under the pol-

icies; for the insurance policies are only contracts of indemnity. Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed. 231. The adjuster's agreement cannot by any possibility be construed to mean that the insurance company would pay to those having an insurable interest less than the whole interest more than the loss they actually sustained. It follows that in our opinion the court erred in sustaining the demurrer and in withdrawing from the consideration of the jury evidence of the amounts due by the plaintiff trustees under the trust agreement.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

SIBLEY, District Judge (concurring specially). I concur in the judgment of reversal, but differ as to the reasons for and the result of it. By a standard form of insurance policy, having the usual printed warranty against chattel mortgages and that the interest of the insured is sole and unconditional ownership, the insurance company here undertakes to insure against loss by fire "M. Scheuer and C. W. Cobb, trustees for Scheuer, Wise & Co., Harry Scheuer, J. B. Kleinhauser, C. W. Cobb, and S. N. Cox." The subject of the insurance was a stock of merchandise in the possession of Cobb and Scheuer under a written declaration of a trust to sell out the goods and from the proceeds pay the above-named beneficiaries fixed amounts, aggregating $22,000, besides expenses and salaries. This paper does not state what is to be done with the remainder, but there is evidence that further amounts were agreed to be paid some of the above named and others and that the residue of the stock was then to be turned over to H. S. Bates.

Valid trusts of personal property may be created in Florida by writing, by parol, or both. Bay Biscayne Co. v. Baile, 73 Fla. 1120, 75 South. 860. "A trustee's interest in the trust estate is insurable when coupled with a present right to possession or with the actual possession. * * * A trustee under a deed of trust in the nature of a mortgage has a separate insurable interest in the property." Joyce, Insurance, § 932; Dick v. Franklin Fire Ins. Co., 81 Mo. 103. In the absence of inquiry or warranties as to title and ownership, Cobb and Scheuer might have insured their interests as trustees without specific reference to them. Joyce, Insurance, § 1091; Howard Fire Ins. Co. v. Chase, 5 Wall. 509, 18 L. Ed. 524. In view of the warranties present in these policies, there were appended to their names the words "trustees for Scheuer, Wise & Co.," etc. These words specially written into the policy blank, cannot be disregarded as surplusage, or mere descriptio personæ; Platho v. M. & M. Ins. Co., 38 Mo. 248, 253. They are to be interpreted not technically but as they would be understood by intelligent business men. Canton Ins. Office v. Independent Trans. Co., 217 Fed. 213, 133 C. C. A. 207, L. R. A. 1915C, 408. To insure "Cox and Scheuer, trustees" for others, is to insure them as trustees, they being in fact such. Since as trustees they can be damaged or suffer loss only by loss of or damage to their trust interests, these interests are thereby made the subject of the insurance.

The written words, read in the light of the printed policy, mean that, notwithstanding Cobb and Scheuer have not the sole and unconditional

ownership of the property, but only certain trust interests, that nevertheless the company agrees to insure them against loss by fire as such trustees. The written words are an "agreement otherwise' added to the policy according to the very terms of the warranty said to be violated. Insurance written to A., mortgagee of B., would insure the mortgagee's separate interest, which is a different thing from the mortgagor's insurance of the property, even though the loss be payable to the mortgagee. Carpenter v. Providence Ins. Co., 16 Pet. 495, 10 L. Ed. 1044. Insurance by a standard policy written to A., trustee in bankruptcy of B., would, I think, insure the interest that vested in the trustee by the adjudication and his appointment, though the bankrupt may not have been the sole and unconditional owner, and though the property be incumbered by many mortgages.

The warranty speaks of the ownership of "the insured." "The term 'the insured' refers to the person applying for the insurance and entering into the contract therefor, and not to another person to whom the loss may be payable." 26 C. J. p. 82. The insured here are Scheuer and Cobb, and not the beneficiaries of their trust. They made the insurance contract and are entitled to collect the money on it, even though they be accountable to the beneficiaries according to their trust after collecting it. Joyce, Insurance, § 3621. This is not the case of insurance taken as bailee or agent for another, which that other has authorized or may adopt and ratify. These trustees alone could sue at law on this contract; they are the plaintiffs in this suit, and their citizenship alone was dealt with in removing the case to the federal court. *Their* ownership must have been sole and unconditional under this warranty, had not it been by the use of the words "trustees for" others, which import a qualified and restricted ownership, "*otherwise agreed.*" Even if the named trust beneficiaries could be treated as "the insured," and it be said that, since they may have the sole and unconditional ownership in some trusts, that there is therefore a possible compatibility of the warranty with the agreement to insure trustees as such, a similar holding by the Circuit Court of Appeals as to a warranty involved in Hagan v. Scottish Union, 186 U. S. 423, 22 Sup. Ct. 862, 46 L. Ed. 1229, was there reversed by the Supreme Court. Remarks made in that case are pertinent here:

"Courts will not endeavor to limit what would otherwise be the meaning and effect of the written language, by resorting to some printed provision in the policy, which, if applied, would change such meaning and render the written portion substantially useless and without application." Page 428 (22 Sup. Ct. 864). "It seems to us that the very purpose of stating that the insurance was on account of whom it may concern was to do away with the printed provisions in regard to the sole ownership and to the change of interest. It was an agreement 'otherwise provided' than in the printed portion of the policy." Page 431 (22 Sup. Ct. 865).

The policies here sued on effectually insure Cobb and Scheuer against loss to the interests which they held in trust for the named beneficiaries at the time of the insurance and of the fire, even though it be established that there were other interests held by them for, or belonging to, others.

But the logical result of the interpretation is that only the trust interests described were insured. If Bates or Mrs. Bates had an interest, in

trust or otherwise, it was not insured by the policies under discussion. "Designatio unius exclusio alterius." The principle of interpretation is that applied in numerous cases, where one person, interested with others, insures in his own name only. 3 Joyce, Insurance, § 1693; Graves v. Boston M. Ins. Co., 2 Cranch. 419, 2 L. Ed. 324; Russell v. New England Ins. Co., 4 Mass. 82.

The words of the adjuster's agreement, taken alone, might support the contention of the trustees that it fixes the amount of the recovery. But it refers to the nonwaiver agreement made the same day, and says that it was made in pursuance of the nonwaiver agreement. The latter clearly contemplates only a fixing of the amount of the loss without prejudice to any contention as to liability for it. In the absence of evidence that the adjustment actually took a wider scope, it ought reasonably to be concluded that no question of liability was intended to be settled.

An issue should be tried to determine the value at the time of the fire of the trust interests insured; that is to say, whether they embraced the whole stock, or only the amounts which the trustees were still to raise from the stock and pay to the named beneficiaries at that time, and what loss if any resulted from these trust interests.

The policy of the Dixie Insurance Company seems on its face not to be concurrent with those considered here, though perhaps permitted by a rider on the latter. No opinion is expressed as to the validity of the Dixie policy, or, if it is valid and not concurrent, what it covers, or as to the rights of the several insurers as between themselves; these questions not having been raised and argued.