THE BAY BISCAYNE COMPANY, *Appellant*, v. J. C. BAILE *et al., Appellees.*—No. 2040.

THE BAY BISCAYNE COMPANY, *Appellant*, v J. C. BAILE, *Appellee.*—No. 2041.

W. B. OGDEN, *Appellant*, v. J. C. BAILE *et al., Appellees.*—No. 2042.

Consolidated.

## Opinion Filed May 24, 1917.

1. To constitute a valid trust in personalty "three circumstances must occur: Suffcient words to raise it; a definite subject-matter; and a certain and ascertained object;" such a trust may be created by deed or may rest entirely in parol, or may be partly in writing and partly in parol.

2. The evidence in this case has been carefully examined and scrutinized, and establishes the fact that a trust was created by O in favor of C, with B as the trustee.

3. Where a trust has been created, and a trustee appointed, and given possession of the trust estate, the trust cannot be destroyed by the failure or omission of the trustee to perform all of his duties promptly. Acts of omission of the trustee in performing the details of the trust will not destroy it.

4. Where the creator of a trust endeavors to repudiate it by legal action, and it becomes necessary for the trustee to employ counsel to protect same, the trustee is entitled to his reasonable counsel fees, costs, and necessary expenses to be paid out of the trust estate.

5. A trust was created by O. for benefit of C. with B. as trustee holding the trust property. O., the creator, undertook by bill in equity to destroy the trust, and recover the trust property. The trustee, finding it necessary to protect the trust estate, filed a petition in the same suit asking the court to allow

a reasonable fee for his counsel. *Held,* that there was no error committed by the chancellor in allowing the trustee a reasonable fee for his counsel, and that, too, upon the petition filed in the same suit.

6. Where the creator of a trust, after bringing bill in equity to destroy the trust, subsequently enters into a written agreement with the *cestui que trust,* who is *sui juris,* abrogating the trust, releasing the settler in full, and directing the trust property to be immediately delivered to the settler, the Circuit Court has power to prevent the delivery of the trust property until all proper costs, expenses and counsel fees of the trustee for protecting and defending the trust in the courts are paid; and may declare a lien on such trust property in favor of the trustee, and provide for the inforcement of the payment of such costs, expenditures and counsel fees out of same by sale thereof.

7. Courts of chancery have the inherent right, in dealing with trusts, to require payment out of the trust fund to the trustee for all his necessary costs, expenses and reasonable counsel fees for defending the trust estate, and in order that its decree shall be enforced, may declare a lien on the trust estate for such payment, and may also make provisions for the sale of the trust property or so much thereof as may be necessary to pay same.

Appeal from Circuit Court for Dade County; H. Pierre Branning, Judge.

Decree affirmed.

*Atkinson & Burdine,* for Appellants;

*Shutts, Smith & Bowen,* and *A. J. Rose,* for Appellees.

WILSON, *Circuit Judge.* —On August 27th, 1914, The Bay Biscayne Company, a corporation, filed its bill

of complaint in the Circuit Court of Dade County against J. C. Baile, Abba Miller Otstott, and her husband, E. W. Otstott, alleging, in substance, that the complainant was the owner of a certain promissory note dated July 13th, 1912, for the sum of One thousand dollars, payable three years after date, which note was secured by a mortgage bearing even date executed by the two Otstotts to the complainant. And that these papers were kept by the complainant as an investment until the summer of 1913, and the complainant sought to negotiate a loan at that time with the Miami Bank & Trust Company, of Miami, Florida, and that the complainant endorsed the said note and delivered the same, together with the mortgage, to said Bank as security for a contingent loan, and failing to procure the loan, left the said note and mortgage with the said bank for safe keeping; that the defendant, Baile, is, and for a number of years has been vice-president of the Bay Biscayne Company, and has been more or less active in the management of business transactions and minor details connected with complainant's transactions, collecting rents and interest due on loans made by the complainant. That during the year 1913, while the president of the said The Bay Biscayne Company, W. B. Ogden, was in the North, the said J. C. Baile withdrew from the bank the said note and mortgage described and the same were carried by said Baile to the Bank of The Bay Biscayne Company of, Miami, Florida, where they were placed by him in the safety deposit box of the complainant in the vaults of said bank; and that afterwards, the said J. C. Baile withdrew the said note and mortgage and thereafter, kept same in his own possession. The bill then alleges that in May, 1914, the said J. C. Baile sold and assigned his stock in The Bay Biscayne Company to W. B. Ogden, the president of said company, and thereafter,

Baile was no longer connected with the company in any manner, whatsoever. Upon severing his relations with the company the complainant demanded the return of the said note and mortgage, but Baile refused to deliver same to the company. The bill further prays for an accounting and as amended prays for an injunction restraining Baile from hypothecating, assigning, transferring, or in any manner, disposing of the said mortgage and note, and also prays for a receiver to take charge of the said note and mortgage, and collect the interest, etc. The bill also alleges that while the complainant did not authorize the defendant, Baile, to take the said note and mortgage from the bank, yet complainant knew, in a general way, that said Baile had said note and mortgage, and was collecting interest thereon, and was negotiating with the maker, who from time to time desired extension of interest payments.

In September, 1914, the said defendant, J. C. Baile, filed his answer denying that the complainant was the owner of the note and mortgage described in the bill of complaint, and alleging that the said note and mortgage had been transferred to the defendant, Baile, in trust for the benefit of Georgiana Carhart. The answer deals with other matters mentioned in the bill of complaint such as the effort to procure a loan, and the complainant having the note and mortgage in certain banks. The defendant, Baile, further answers that he was duly and regularly authorized by the complainant to transact all of the business affairs as he had done since the attempted organization of the corporation, and that he had a due and regular power of attorney from the said corporation to transact all of its business. The answer further alleges that the complainant is, to all intents and purposes, W. B. Ogden, who owns all of the stock in the corporation, except the neces-

sary shares held by other people to constitute a legal cor-
poration; that while at one time the defendant, Baile, ap-
pears as an officer and stock-holder in said corporation,
he never had the actual and visible possession of said
stock, and that when requested by W. B. Ogden, he
transferred his stock to the person designated by the said
Ogden, and received no consideration, whatever, for said
transfer.    Further answering the defendant, Baile, says
that he holds the note and mortgage in trust for the bene-
fit of one Georgiana Carhart; the agreement between him-
self and Ogden being that he shall hold certain notes and
mortgages in trust to pay to the said Georgiana Carhart
the sum of Twelve hundred dollars per annum so long as
she may live, or remain dependent, for services rendered
during a period of more than twelve years as house-
keeper to W. B. Ogden, the president of the corporation,
and the practical owner of all of the stock of said corpo-
ration; and defendant, Baile, answers that he has refused
to turn over the said note and mortgage to the complain-
ant for the reason that the said security was transferred
to him in trust, and  that to return the same without in-
structions from both parties to the trust agreement,
would be a violation of the trust, and further alleges that
he has been performing his duty as trustee under the trust
agreement.    He further alleges that all of the property
owned by the said Ogden within the State of Florida in
the nature of real estate and mortgages and notes, have
been held by the complainant corporation for the conven-
ience of the said Ogden, who has been separated from
his wife for seventeen years or more, and could not exe-
cute deeds and mortgages in his own name for the reason
that his wife would not join therein.    To this answer is
attached a copy of an alleged trust agreement, as well as
a letter from the said W. B. Ogden to the said J. C. Baile,

with reference to the trust, both of which will be later adverted to in this opinion.

On the same date, August 27th, 1914, The Bay Biscayne Company filed a bill in equity in the Circuit Court of Dade County, same being the above named case 2041, which bill of complaint, in so far as the material parts are concerned, alleges that J. C. Baile was one of the incorporators of the complainant company, and that in transactions on behalf of the company, he procured title to certain described lands in Dade County, paying Fifteen hundred dollars for same with funds furnished by W. B. Ogden, the president of the company, and title was taken in the name of J. C. Baile, although, in fact, the land was the property of the complainant corporation. That J. C. Baile and his wife sold and conveyed the land to one E. B. Douglas for the sum of Four thousand, Five hundred dollars. That Five hundred dollars was paid in cash and the remainder of the purchase money was evidenced by four promissory notes aggregating Four thousand dollars, executed by the said Douglas to the said J. C. Baile, and a mortgage was executed on the lands to secure the payment of the principal and interest of said notes. The notes and mortgage were taken in the name of J. C. Baile. The bill alleges that the lands were held in trust by Baile for the complainant, and that the notes and mortgage securing the payment of the purchase money were held in trust by Baile for the benefit of the complainant. The bill alleges further that Baile was a stock-holder and vice-president of the complainant company, and sold and transferred his stock, and thereafter, had no interest or connection with the said notes and mortgage other than as trustee for the complainant. That the complainant demanded of said Baile that he transfer the said notes and mortgage to the complainant, but that said J. C. Baile

falsely and fraudulently pretended to be the owner of the said notes and mortgage, and with intent to defraud the complainant, and with intent to convert the proceeds of said notes and mortgage to his own use, refused, and still refuses, to transfer same to complainant. The bill also alleges that the said Baile will dispose of the said notes and mortgages, and prays for an injunction and the appointment of a receiver and an accounting.

On the 11th day of November, 1914, the defendant, J. C. Baile, filed his answer, and the salient points therein are that he admits having the property mentioned, but alleges that it is the property of W. B. Ogden, who contributed the entire purchase price, and he denies that he agreed to hold said property in trust for the complainant. He admits transferring or conveying the property of E. B. Douglas for the consideration alleged, and admits that the notes and mortgage were made to him under and by the directions of Ogden, himself. In his answer he alleges that the said Douglas notes and mortgage were held by him as trustee for one Georgiana Carhart; the terms of the trust being the same as shown in the answer filed to the bill in case No. 2040. The answer also alleges that it was at the suggestion of the complainant that these said Douglas notes and mortgage were included as a part of the trust security to be held for the benefit of Georgiana Carhart, and denied holding the said notes and mortgage for the said Ogden.

On the 27th day of August, 1914, W. B. Ogden filed a bill of complaint in the Circuit Court in and for Dade County, Florida, against J. C. Baile, J. W. Watson, and his wife, Cora Watosn, Abba Miller Otstott and her husband, E. W. Otstott, as defendants, same being case No. 2042 above mentioned, in which the complainant, W. B. Ogden, alleges, among other things, that on the 11th day

of May, 1914, he was the owner of certain promissory notes and mortgage given to secure the same described as follows, to-wit:

Note dated July 22nd, 1912, made by J. W. Watson and his wife, Cora Watson, in the sum of four thousand dollars, payable to the order of W. B. Ogden five years after date, with interest from date until paid at the rate of eight per cent per annum, payable semi-annually, etc., which note was secured by mortgage of same date executed by the said J. W. Watson, and his wife, Cora Watson, as mortgagors to the said complainant covering and embracing certain described lands; also certain notes made by Edward Otstott, and his wife, Abba Miller Otstott, to the complainant secured by a mortgage on real estate. The bill further alleges that said notes and mortgage were kept as investments, and the other allegations of the bill are practically the same as the allegations of the first bill of complaint above mentioned in suit No. 2040, and prays for an injunction against Baile and against Watson and wife and Otstott and wife from paying Baile any of the principal and interest; and prays also for a receiver, and an acounting.

On the 26th day of August, 1914, the court commissioner, H. P. Branning, upon a certificate of illness of the Judge of the said Circuit, granted an injunction or restraining order in the said suit of W. B. Ogden against J. C. Baile, J. W. Watson, and his wife, Cora Watson, and Abba Miller Otstott, and her husband, E. W. Otstott, and therein restrained and enjoined the defendant, Baile, until the 14th day of September, 1914, from selling, transferring, assigning, pledging, hypothecating, or in any manner disposing of all or any part or portion of the promissory notes and mortgages described hereinabove. The other defendants were also enjoined from paying

anything to the defendant, J. C. Baile, from the date of the making of the order to September 14th, 1914. This preliminary injunction was made returnable before the Judge of the Third Judicial Circuit, on account of the illness of the Judge of the Eleventh Circuit.

On the 14th day of December, 1914, the defendant, J. C. Baile, answered the said bill of complaint filed against him and J. W. Watson and Cora Watson, Abba Miller Otstott, and E. W. Otstott, and denies that on the 11th day of May, 1914, the complainant was the owner of the promissory notes and mortgages described in the bill of complaint, but avers that on the contrary, the said notes and mortgages had for a long time prior to that date been in the possession of the said J. C. Baile, and held by him in trust for the benefit of one Georgiana Carhart, and denies therefore, that the complainant was entitled to the posession of the said notes and mortgage at the time of the filing of the bill of complaint. The answer admits that the said notes were taken to the Miami Bank and Trust Company for the purpose of obtaining a loan, and that the complainant turned over to the defendant all the details in connection with negotiating said loan for the complainant, but the loan was not obtained. The answer also avers that the complainant has not, for many years passed, been actively engaged in business, and that the defendant, J. C. Baile, for six years had been the business representative of the complainant, and had carried on all of complainant's business transactions, acting as his agent, and as a mark of his confidence in the defendant, executed to the defendant, Baile, a full power of attorney, and under such power of attorney, the defendant, Baile, signed papers in the name of complainant, made notes, negotiated loans, and gave instructions in all business details in which the complainant was in-

terested.  That he has handled for the complainant in investments and otherwise, hundreds of thousands of dollars, and has had the care, custody, and control of hundreds of thousands of dollars worth of property.  He admits that he took the notes and mortgages from the Miami Bank and Trust Company and carried them to the Bank of Bay Biscayne and turned them over to the cashier with the request that the said cashier obtained the loan which the other bank had refused.  That after waiting a reasonable length of time and not getting the loan, he called for the notes and they were redelivered to him; that he was acting in accordance with his agency and employment in keeping said papers, and that he had not represented fraudulently to the cashier that he was an agent because the said cashier was perfectly aware of his relations to the complainant, and knew of his power of attorney and the general scope of his employment.

The answer also alleged that he held all of these papers in trust to collect the interest thereon, and to pay to Georgiana Carhart the sum of twelve hundred dollars per annum so long as she might live and remain dependent, and that at her death or her ceasing to be dependent, the whole of said securities, or their equivalent in cash, or other securities, should be returned to the complainant. That said trust was made for a good and valuable consideration passing from the said Georgiana Carhart to the complainant for services rendered as housekeeper for the complainant for more than twelve years last past, and that this defendant, Baile, accepted said trust by directions of the complainant and cestui que trust, and that he is now performing said trust in accordance with its terms. He further alleges that he could not now surrender the securities without violating the terms of the trust agreement, and without leaving himself liable for a suit for

breach of trust by the cestui que trust.   He further alleges that he has kept a strict account of all monies collected and has been performing and carrying out the trust, and offers to produce the original notes and mortgages in court when so demanded by the court.   He further denies that the complainant has any interest in the said notes and mortgage except a contingent interest based upon the death of the cestui que trust or her ceasing to be dependent.   He further denies that it is his intention to sell or dispose of or hypothecate the said notes and mortgage other than in the performance of his trust as he is authorized to do.   Attached to this answer is a copy of the alleged trust agreement, and also a letter admitted to have been written by the complainant, W. B. Ogden, to J. C. Baile and addressed to "My dear Don Carlos," which letter was sent from Key West and was dated January 28th, 1914.

On the 14th day of September, 1914, the defendant J. C. Baile, filed his motion to dissolve this temporary injunction which was accompained by affidavits in support of same.

On the 17th day of September, 1914, the judge of the Third Judicial Circuit made an order dissolving the preliminary injunction, and denying the application, for the appointment of a receiver.   However, on the 23rd day of October, 1914, the same Judge made an order appointing a receiver and requiring Baile to deliver the said notes and mortgages to the receiver; as well as to show the amount collected by him up to the date that he should deliver the notes and mortgage to the receiver.   The complainant entered his appeal to this Court from the order of the Circuit Judge denying the motion to dissolve the temporary injunction.   This Court said "There was no er-

ror in dissolving the preliminary injunction pending a further hearing of the cause." 69 Fla. 458.

On the 12th day of July, 1915, the trial judge made an order refusing to allow the defendant to set down the case on bill and answer, but allowed the complainant to file a replication; and in the same order decreed that J. B. Clemmons be appointed Special Master to take testimony of the respective parties to the cause concerning all issues involved, if there be any remaining unsettled. This order was made by Judge Branning of the Eleventh Circuit, who granted the preliminary injunction.

On the 12th day of July, 1915, the complainant, W. B. Ogden, filed a motion in this case setting up in substance the different steps taken in this proceeding from the time of the filing of the bill of complaint to the time of the affirmance by this Court of the order of the chancellor refusing to dissolve the injunction, in which motion it was stated that since the ruling of this Court, the said Georgiana Carhart by a certain written instrument had, for a valuable consideration, released, conveyed, assigned, transferred, and set over all and singular the notes therein, they being the same notes involved in this suit, belonging to the complainant, and ordered and requested that the said notes be instantly delivered to the complainant. The motion asked the Court for an order requiring the receiver to turn over and deliver to the complainant the said notes and mortgage described in the bill.

On the 6th day of July, 1915, the defendant, J. C. Baile, filed a petition in the three cases setting forth the existence of the trust, and the attack on same, his employment of counsel to defend and protect the trust, and asked for counsel fees and expense money, as well as further asking the Court to fix the amount of a reasonable attorney's fee, and requiring the receiver to hold the se-

curities to the extent of fifteen thousand dollars until the fees and expenses were paid.

On the 10th day of July, 1915, the Judge of the Court below made an order denying the application of the complainant to require the receiver to return to complainant the securities described in the bill of complaint, in which order the Court stated "And it appearing to the Court that the cestui que trust has filed her disclaimer, or renoucement, in writing, whereby it appears that she has no further interest in the subject matter of the litigation, and is desirous of having this suit dismissed, but it further appearing to the Court that the costs, charges and expenses, including attorney's fee incurred by J. C. Baile in defending the trust in this cause have not been paid; and it appearing to the Court that the said J. C. Baile, as trustee, should be paid out of said securities the expenses incurred by him, including attorney's fees, for which he has become liable in defending said trust, to which ruling the complainant excepts. It is therefore ordered, adjudged, and decreed by the Court that the said petition be, and the same is hereby denied, and it is directed by the Court that the said securities described in the bill of complaint in this cause be retained by the receiver until it appears to this Court that the proper costs, charges, and expenses, incurred by said J. C. Baile in defending the trust, be paid, or until the further order of this Court, to which ruling the complainant excepts, it is further ordered that J. B. Clemmons, an attorney of Miami, Florida, be and he is hereby apointed Special Examiner to take the testimony of witnesses to determine the proper amount to be allowed J. C. Baile for his costs, charges, and expenses, including attorney's fees, in his behalf."

On February 11th, 1916, the Special Examiner filed in

court his report, together with the testimony taken before him.

On the 18th of February, 1916, counsel for defendant served on counsel for complainant notice of final hearing.

On the 7th day of April, 1916, the court below made a decree, in which, by consent of counsel, the three cases were consolidated into one by reason of the fact that the interests were identical, and the testimony the same. The court further ordered and decreed that there was a trust estate created for Georgiana Carhart, as asserted by J. C. Baile, to the amount of fifteen thousand dollars; that the creator of the trust, W. B. Ogden, endeavored to repudiate the same by legal action, and that it was necessary that J. C. Baile, the trustee, employ counsel to protect the same, and that the said counsel employed by the said J. C. Baile, did effectually protect the same. The decree also granted the petition for counsel. fees, costs, and disbursements and decreed the amount of three thousand dollars as a reasonable fee to be allowed the defendant, which fee was decreed to be a lien on the said property in the possession of the receiver. The decree further provided that the said W. B. Ogden and The Bay Biscayne Company pay the amount of the said attorney's fee, costs, and expenses, instanter out of the funds and securities in the hands of the receiver, and the receiver was further directed to turn over and surrender to W. B. Ogden and The Bay Biscayne Company all surplus in securities above fifteen thousand dollars par value in his hands. The decree further provided that petitioner should render an accounting to the complainant herein of all monies received since the creation of the trust up to and including the date of the issuance of the preliminary injunction. And the receiver was directed to retain in his possession the amount of fif-

teen thousand dollars par value until the further order of the court.

On the 7th day of April——the court made a further or supplemental decree in the said consolidated cases, in which it decreed that "It appearing to the court from an examination of the files and records in said cause, and from testimony taken before the Master, that the said complainants have not shown when said J. C. Baile obtained possession of the securities, notes and mortgages mentioned in the said bills of complaint, and not having shown from the testimony taken in said cause, that he collected any monies prior to the date of said trust agreement, to which the complainants, or either of them, are entitled, it is therefore ordered, adjudged, and decreed that the petition for an accounting from J. C. Baile to the complainants, prior to date of said trust agreement, is hereby denied without prejudice, however, to the complainants to file a new action for such accounting if entitled thereto." The Court in said decree made an order that the trust be cancelled and terminated by reason of the fact that since the institution of the suits Georgiana Carhart had signed a release of all of her rights in the notes and mortgages mentioned in the bill of complaint. This decree further provides that upon complainants entering into a bond in the sum of thirty-five hundred dollars, that the receiver should deliver to the complainants, or their solicitors, all of the notes and mortgages mentioned in the said bill of complaint, together with all sums of money collected thereon, except so much of said notes and mortgages as will aggregate the sum of fifteen thousand dollars, and less the fees and disbursements to be allowed receiver by this court. There was contained in said decree a further order that unless a supersedeas bond was given, and unless the receiver should pay the sum of

three thousand dollars to the defendant, J. C. Baile, for attorneys fee within thirty days from the date of the decree, that then so much of said notes and mortgages·in his hands, as receiver, as should yield the sum of three thousand dollars and·the costs of court, be sold at public outcry for cash before the courthouse door after four weeks advertisement on some legal sale· day, and that out of the proceeds should be paid first, the cost of the court in the above numbered cases; and next, the sum of three thousand dollars for the solicitors fees and the surplus, if any, to be paid to the complainants herein, or their solicitors.   This decree also contains a provision that by agreement of all parties the said three ·cases are consolidated.. On the 20th day of April, 1916, J. C. Baile made his report and accounting as required by the court.

On the 2nd day of May 1916 the complainants entered their appeal from the decree of the court made on April 7th, 1916, and also from the supplemental decree. Supresedeas bond was given, and the three cases consolidated, came to this court on the 24th day of July 1916 with nineteen asignments of error.

The first assignment of error complains that the court erred in dissolving the temporary injunction or restraining order in said cause.   This Court has already affirmed the order complained of.   See Ogden v. Baile, et al., 69 Fla. P. 458; and under it·the Court, after hearing all of the evidence, is satisfied that there appears no reason why the former decision should not stand.

There are several assignments of error but what we conceive to be real issues in this cause are:

First:  Did the court below err in finding that a trust was created by W. B. Ogden for the benefit of Georgiana Carhart with J. C. Baile as trustee, and,

Second:  If the court did not err in finding there was

such a trust, then did the court err in allowing attorneys fee for the trustee for protecting the trust.

The first question to be determined therefore is whether W. B. Ogden actually created a trust for the benefit of Georgiana Carhart with J. C. Baile as trustee. This is largely a question of fact to be determined from the testimony offered, though, there are some legal rules by which the testimony should be measured. It appears from the pleadings and the testimony in these cases that Mrs. Georgiana Carhart was for twelve years the housekeeper for W. B. Ogden; it appears also from the same source that W. B. Ogden was a man of means, and was himself, not actively engaged in business, but whose business interests were looked after and carried on under his directions by others. It also appears that for about six years the defendant, J. C. Baile, was the confidential friend, agent, and attorney in fact, for the said W. B Ogden. Georgiana Carhart left the employment of W. B. Ogden about December 1913, shortly thereafter J. C. Baile went to see W. B. Ogden with reference to Mrs. Carhart, and Mr. Ogden in his testimony says that "We discussed what should be done. I told him (J. C. Baile), I was only too willing to give what I could, and I asked him what he thought was the proper thing, and he suggested twelve hundred dollars a year." In his testimony Ogden also said, "I said in any case I could not give as much as I would like to do, but would agree on that,"—the twelve hundred dollars a year. Ogden said that he would make the payments every month, but Baile said that there were not sufficient securities, that Ogden's word was not enough, that he might change his mind. Ogden said that there was some question about the notes and securities

for payment which notes he claimed to be in the Miami Bank & Trust Company at that time. When questioned as to whether any thing definite was settled then at that conversation, he said "Nothing definite except as to the amount." And further stated that the details as to how it should be secured was not settled. At the time Ogden was testifying there was offered in evidence a paper dated January 27th, 1914, which reads as follows:

"The Tee House Plantations
"Lemon City, Florida, Jan. 27th 1914.

"Received from W. B. Ogden the sum of one thousand dollars in cash, a note for one thousand dollars due —— and the securities enumerated below, and such of them, to be selected by J. C. Baile, to the amount of fifteen thousand dollars face value, are hereby guaranteed, as to principal and interest, by said W. B. Ogden, and said selected notes and securities are hereby accepted as full and complete satisfaction for any claim or claims of any kind whatsoever, that may have arisen, or may arise from any cause, conditions or appearances, no matter how indirect or direct. The selected securities to be held in trust for the purpose fully set forth in the statement annexed and signed by J. C. Baile in the presence of witnesses.

| SECURITIES | | | DATE |
|---|---|---|---|
| Note | $ 1000 | W. E. Otstott _____ | July 13, 1912 |
| Note | $ 500 | W. E. Otstott _____ | Jan. 4, 1913 |
| Note | $ 1250 | W. E. Otstott _____ | Feb. 12, 1913 |
| Note | $ 1250 | W. E. Otstott _____ | Feb. 17, 1913 |
| Note | $ 1400 | W. E. Otstott _____ | Mar. 14, 1913 |
| Note | $ 4000 | J W. Watson _____ | July 22, 1912 |

72

The Bay Biscayne Co. v. Baile et al.—Opinion of Court.

Note    $ 1000   E. B. Douglas _____Nov. 22, 1913
Note    $ 1000   E. B. Douglas _____Nov. 22, 1913

        $11400
         8000

        $19400
Note    $ 1000   E. W. Otstott _____Jan.  4, 1913
Note    $ 1250   E. W. Otstott _____Feb.  8, 1913
Note    $ 1250   E. W. Otstott _____Feb. 17, 1913
Note    $ 1500   E. W. Otstott _____Mar. 14, 1913
Note    $ 1000   E. W. Otstott _____Aug. 22, 1913
Note    $ 1000   E. B. Douglas _____Nov. 22, 1913
Note    $ 1000   E. B. Douglas _____Nov. 22, 1913

        $ 8000

"The Douglas notes are made payable to J. C. Baile, but are owned by W. B. Ogden.

Witness :_____
Witness :_____as to _____
                        Sig._____
                        Sig._____

STATEMENT ANNEXED REFERRED TO ABOVE.

"I acknowledge possession of the notes with their respective securities belonging to W. B. Ogden, and I agree to account to W. B. Ogden for the above $19,400 and his share in the E. A. Waddell notes (given in part-payment for the Ave. D. lots), in manner agreed upon between him and the writer, i. e., that I shall pay to Mrs. G. P. Carhart each year during her dependency the sum of $1,200 paying in quarterly payment of $300 each; said

amount, so paid, to be derived solely from the interest or earnings of above selected and guaranteed notes (Waddell notes are a separate transaction), and I agree, without remuneration, to attend to all matters relative to collecting interest, renewing notes, relending money when notes are paid, and finally to refund to W. B. Ogden the amount in notes or money when it is shown that the said Mrs. G. P. Carhart is married, or is no longer dependent, or is no longer living. Substitution of any of the above notes and securities shall be in notes and securities satisfactory to W. B. Ogden. In case of my death or inability to excute the above trust, it shall devolve up on W. B. Ogden, or an appointee satisfactory to him. While I agree to safeguard the above to the best of my ability I shall not hold myself responsible for losses absolutely unavoidable, or beyond my control to protect.

"(Sig) J. C. BAILE."
"Witness W. R. Kellum
"I agree and accept
        "(Sig) G. P. Carhart.
"Date————

This paper is typewritten and admitted by W. B. Ogden to have been typed by himself. It is signed by J. C. Baile and G. P. Carhart. The first paragraph of this paper was written by W. B. Ogden according to his own testimony. The second paragraph simply gives an itemized statement of the notes, and upon comparison, it will be found that they are the notes described in the bills of complaint and answers. The only other writing on the second paragraph being the words "The Douglas notes are made payable to J. C. Baile but are owned by W. B. Ogden." The third paragraph of this paper is the one referred to in the first paragraph as being the "Statement annexed and signed by J. C. Baile in presence of wit-

nesses." The third paragraph was the one which was written by Mr. Baile, it being a receipt for the notes described as a statement showing that they are held in trust, etc. The original draft of this paper was offered in evidence. W. B. Ogden testified that he wrote the first paragraph and the rest was copied from a paper received from Mr. Baile. Counsel suggested to Mr. Ogden that as the "Top paragraph" is rather an uncertain statement that he read to the examiner just what he, Ogden, wrote. And Mr. Ogden reads the following paragraph, which he says he wrote. , "Tee House Plantation, Lemon City, Florida, January 27, 1914. Received from W. B. Ogden the sum of one thousand dollars in cash, a note for one thousand dollars due blank date and the securities enumerated below and such of them to be selected by J. C. Baile to the amount of fifteen thousand dollars face value are hereby guaranteed as to principal and interest by said W. B. Ogden, and said selected notes and securities are hereby accepted as full and complete satisfaction for any claim or claims of any kind whatsoever that may have arisen, or may arise from any cause, condition or appearance, no matter how indirect or direct. The said selected securities to be held in trust for the purpose fully set forth in the statement annexed and signed by J. C. Baile in the presence of witnesses.

The rest of the paper was a copy which was prepared by Mr. J. C. Baile. In other words, the part of this paper which was written by Mr. Ogden provides that the securities are to be held in trust for the purpose fully set forth in the statement annexed and signed by J. C. Baile. The statement annexed and signed by J. C. Baile reads as follows:

"STATEMENT ANNEXED REFERED TO ABOVE.

"I acknowledge possession of the notes with their respective securities belonging to W. B. Ogden, and I agree to account to W. B. Ogden for the above $1940, and his share in the E. A. Waddell notes (given in part payment for the Ave. D. lots), in manner agreed upon between him and the writer. i.e. that I shall pay to Mrs. G. P. Carhart each year during her dependency, the sum of $1,200 paying in quarterly payments of $300 each; said amounts, so paid, to be derived solely from the interest or earnings of above selected and guaranteed notes (Waddell notes are a separate transaction), and I agree, without remuneration, to attend to all matters relative to collecting interest, renewing notes, relending money when notes are paid, and finally to refund to W. B. Ogden the amount in notes or money when it is shown that the said Mrs. G. P. Carhart is married, or is no longer dependent, or is no longer living. Substitution of any of the above notes and securities shall be in notes and securities satisfactory to W. B. Ogden. In case of my death or inability to execute the above trust, it shall devolve upon W. B. Ogden, or an appointee satisfactory to him. While I agree to safeguard the above to the best of my ability, I shall *not* hold myself responsible for losses absolutely unavoidable, or beyond my control to protect.

"(Sig) J. C. BAILE."

"Witness: W. R. Kellum
"I agree and accept
"(Sig) G. P. Carhart.
"Date———

As stated, the notes referred to were the notes involved in this suit. Mr. Ogden in his testimony claims that he drew up two tenative forms. He also says in his

testimony that the list of securities described in the contract were furnished him by J. C. Baile. Mr. Ogden also admits in his testimony that he made a slight change in the last paragraph which was signed by Baile, by inserting the word "not" which appears to be written in ink. Mr. Ogden also admits that he made some additions to the contract, and he admits in his testimony that he and Mr. Baile agreed that the twelve hundred dollars should be paid to Mrs. Carhart annually. He also admits that he wrote the first part and that he copied the other two parts from the two pasted parts or the form of the contract sent him by Mr. Baile; thus, we find that after writing the first part or paragraph of the trust agreement, he he also copies the list of notes and the last paragraph which were furnished him by Mr. Baile and made one complete writing of the three different parts. After the conversation between Baile and Ogden, Mr. Ogden prepared and typed two forms which he sent to Baile for his and Mrs. Carhart's signature. Ogden in the part he wrote guaranteed the principal and interest of the securities to be selected. In both forms it is agreed that Baile shall hold the securities in trust for the purpose fully set forth in the statement annexed and signed by J. C. Baile. One of the forms contains a "substitution" and death or inability clause. And these additions were made by Mr. Ogden as shown by the testimony. The original draft did not contain the guaranty clause as did the one which was finally signed by J. C. Baile and Mrs. Carhart. Mr. Ogden himself admits adding this guaranty clause. It appears from the testimony that after having the conversation with Mr. Baile, and just before going to Key West, Mr. Ogden wrote the following note to Mr. Baile addressing him as "Dear Don Carolos :— Just time to catch train. I enclose two forms, will send special delivery letter to-

morrow morning from Key West explaining.   I added substitution and death or inability clause."   From this letter and from reading the trust agreement, it is apparent that not only had the trust agreement been entered into between Mr..Baile and Mr. Ogden before Baile left Ogden's place and before Ogden went to Key West, but that in addition thereto, after full consideration of the matter, Mr. Ogden made additions which he admits in the letters which he wrote.   From Key West he wrote the following letter:

"The Jefferson

"Ollie Demeritt, Mgr.

"Key West, Florida, Jan. 28, 1914.

"My dear Don Carlos.

"I had just time to pack and catch the train when I scribbled you last night.   I thought you wouldn't object to the substitution clause as circumstances might arise when the use of some particular note might be desirable and if replaced by others satisfactory to you, I see no objection. The 'death or inability' clause should read satisfactory to both, but my idea when writing it was, that you would probably choose some one.

"My idea as to the second form was this:   It seems to me more just.   When first talking the matter over, you said 'they' wanted $25000 but you thought $20000 or (momentarily forgetting the high rates of Miami and figuring on a northern basis of 5%) $1000 a year.   I said $1200 a year, upon which we both agreed.   Now $15000 of these notes guaranteed by me both as to principal and interest, as they draw 8% makes $1200 a year.   Even at the best it is very one sided, as you are absolutely assured and I in my turn have nothing but *promises* to rely upon. I think they will be kept, I will admit, or at least the effort

will be made. But you yourself said yesterday that when one got talking to sympathetic listeners one talked anyway. And I would not trust the best woman on earth if her interests are the other way and tempting opportunity fairly put to her. The better the class of security you select for me to guarantee, the better for me. Why don't you put in the Waddell notes?

"In case you have anything to talk over about, get her to sign both forms and then you can sign the one we eventually agree upon.

"Good luck to you all, Lovely weather,

Yours,

"Ogden.

"P. S. By your plan you are getting $21,400, where you only asked for $20000. In any case, however, the $1200 a year is decided upon. So I think that there will be no question about the second or amended form."

In this letter it will be noticed that in two different places Mr. Ogden states that he and Baile had decided upon twelve hundred dollars a year to be paid to Mrs. Carhart. There was nothing left to be done insofar as the amount of the annuity was concerned. This declaration conveys to the mind a fixed and settled purpose that Ogden had fully determined and agreed that out of certain notes and mortgages which he held as investments, there should be paid to Mrs. Carhart the sum of twelve hundred dollars per year so long as she was dependent or continue to live. It shows an intent fully formed and fixed, and the contents of the letter further shows that Baile was the man selected to execute the trust because he says, "The better the class of security you select for me to guarantee, the better for me. Why don't you put in the Waddell notes?" This was leaving the class of security to be selected by Mr. Baile, and naturally Ogden

wanted a good class of security selected so he would not have to be called upon to make good his guarantee. There was nothing left to complete the trust, for the amount had been agreed upon, the trustee had been selected, as well as the beneficiary named. It is claimed that the trust agreement was never completed because it was not signed by Mr. Ogden. Under our view of the case it was not absolutely essential that Ogden should sign the trust agreement. He had already agreed positively that he would pay Mrs. Carhart twelve hundred dollars a year, and that it was to be done by putting certain securities in the hands of Mr. Baile as trustee. If there was anything further to be done, it was merely a matter of detail which would not defeat or destroy the trust. The trust agreement was signed by Mrs. Carhart as provided by Ogden's request and was signed by Baile as requested by Ogden. It was sent by Ogden to Baile as being a paper which embraced the trust agreement in full. If anything further was needed to establish the trust, we might ask why Ogden saw fit months after the trust had been created to procure from Mrs. Carhart a release from the said trust agreement. If there never was a trust created, there never was any need of procuring a release of the kind which he introduced before the court. True Mrs. Carhart denied in this release that any trust was created, but in view of her signing the trust agreement in which she says, "I agree and accept," it can hardly be contended that she was correct in her statement in the release that no trust ever existed. Furthermore, if parol testimony is needed at all to show the creation of this trust we may look to the testimony of both Mr. Baile and Mr. Ogden. There is some claim that in his letter Mr. Ogden stated that Baile could get Mrs. Carhart to sign both forms, which he sent, and that Baile could sign the

one eventually agreed upon. It is claimed under this testimony that there was something else to be done, that is, that Baile and Ogden should eventually agree upon one of the forms. See the testimony of both Mr. Baile and Mr. Ogden on this point. Mr. Baile testified that he received exhibit "A," that he signed it and that Mrs. Carhart signed it. He was then asked these questions: "Q. Did you notify Mr. Ogden after his return from Key West that it had been signed? A. Yes. Q. Did he make any objections to it? A. He did not. Q. What did he say when you notified him, as near as you can recall? A. Good, that is all right."

Mr. Ogden's testimony on this point, including questions and answers is as follows: "Q. After you returned from Key West do you recollect that Mr. Baile stated to you that Mrs. Carhart had signed the trust agreement and that you said, 'All right that is all right?' A. It is quite possible. I don't remember how her signature came to my hands."

Mr. Baile testified that during the time Mr. Ogden remained in Miami from January until the following April, this trust agreement was frequently referred to and discussed. Mr. Ogden in his testimony says that he never agreed verbally or in writing to make this trust agreement for Mrs. Carhart, but in view of the first paragraph of the trust agreement, which he says was written by himself, and the third paragraph of same which was copied by him from something Mr. Baile gave him, and additions made to it by Mr. Ogden himself, and in view of the further fact that the itemized statement of the notes is embraced in the agreement which Mr. Ogden typed himself, and the further fact that in his letter he announces which agreement is most satisfactory to him, that being the one which was finally signed by Mrs. Car-

hart and Mr. Baile, and the further fact that he stated positively that in any event, twelve hundred dollars per year was agreed upon, his testimony is not convincing. This Court heretofore had occasion to discuss the subject of the creation of valid trusts, and in Lines v. Darden, 5 Fla. p. 51 (Text p 72), said that "To constitute a valid trust three circumstances must concur;. sufficient words to raise it; a definite subject; and a certain and ascertained object." This court uses the same language in the case of Floyd v. Smith, et al., 59 Fla. 485. The same doctrine is also laid down in Cyc Vol 39, p. 34, wherein it quotes the exact language of this Court in the two cases above mentioned. Cyc proceeds further to say that "It would seem, however, that the elements of an express trust, as distinguished from the acts or words necessary to create, are the same as those of all trusts, and consisting of a trust res or subject matter, and the holding of the legal title of that property by one person for the benefit of another, while the matters requisite to create such a trust are a sufficient declaration of trust, evincing an intention to create a trust and setting out the trust properly, terms, and parties with reasonable certainty." 39 Cyc. P. 34, and also notes.

In order to constitute the trust there must be sufficient words to create it. In short, there must be a settlor or creator thereof. In this case, W. B. Ogden was the settlor or creator. Next, there must be a cestui que trust, or a living or existing beneficiary, and there must be a trustee. In this case, it is clearly shown from the evidence that it was the intention of Mr. Ogden that Mr. J. C. Baile should act as trustee. So here would be all of the elements necessary to constitute a trust, created by W. B. Ogden in favor of Georgiana Carhart with J. C. Baile as trustee. "Sufficient words to create" the trust

undoubtedly means just what it says, that is, that the language used by the creator of the trust should be sufficiently clear as to indicate with reasonable certainty, that it is his intention to create a trust. The evidence on this point is not only clear, but the facts and circumstances will lead one unerringly to the conclusion that not only did Mr. Ogden intend to create the trust in favor of Mrs. Carhart, but that he actually did so. His talking the matter over with Mr. Baile and saying that in any case he could not give as much as he would like to, but agreed on the twelve hundred dollars a year, which was afterwards followed by his letter from Key West stating that twelve hundred dollars was agreed upon, indicates that he had determined to pay through Mr. Baile to Georgiana Carhart twelve hundred dollars a year as an annuity for and in consideration of her past twelve years' service to him as house-keeper. It is conclusive evidence that twelve hundred dollars was agreed upon for that particular purpose. Before Mr. Ogden could reach the conclusion in his own mind and agree that twelve hundred dollars should be paid to her annually, certainly, he must have reached the conclusion and formed the opinion in his own mind that he was going to create this trust for her benefit, for otherwise, there would have been no necessity, whatever, for his saying and writing the statement that in any event, twelve hundred dollars was the amount agreed upon. This shows an intention to create the trust, even if the trust agreement had not been put in writing; but when we find the evidence supports the fact that the trust agreement is in writing, part of which was written by Mr. Ogden himself, and a part written by Mr. Baile, and the whole copied by Mr. Ogden on his typewriter and sent by him to Baile with directions to have Mrs. Carhart sign the two copies sent, and that Baile could sign

the one which was eventually agreed upon, it is borne in on the mind to a certainty that the trust was created. There is some claim that the trust agreement was never completed because Ogden did not sign the written agreement and because there was no eventual agreement as to which copy should stand as the trust agreement. Upon reading the letter of Jan. 27th, 1914, written by Ogden to Baile we find there was nothing left for him to do to complete the agreement unless it was to participate in the agreement as to which of the two contracts should go into effect. There is nothing in the letter which indicates that Ogden himself desired to sign the contract, but his letter indicates that he desired Mrs. Carhart to sign, and that Baile could sign the one eventually agreed upon. Mrs. Carhart did sign and Mr. Baile signed the same copy which Mrs. Carhart signed and Mr. Baile testified that he informed Mr. Ogden about the signing by Mrs. Carhart and himself and Mr. Ogden said. "Good, that is all right." Upon cross examination Mr. Ogden said when the question was asked him, if he recollected that Mr. Baile stated to him that Mrs. Carhart had signed the trust agreement that he said "good, that is all right," his answer was that "It is quite possible, I don't remember how her signature came to my hands." On this point Mr. Baile is quite clear in his testimony while Mr. Ogden is not. So even if the written trust was not complete in itself; it was thereafter completed after Mr. Ogden returned from Key West. A valid trust in personal property may be created either by deed, or may rest entirely in parol, or may be partly in writing, and partly in parol. Porter v. Bank of Rutland, 19 Vermont p. 410.

"It is well established that at common law and under the statute of fraud, as interpreted by the English courts, the trust in personalty can be created by parol." See

notes to the case of Howard v. Marshall in L. R. A. (NS) Vol. 51 p. 1208, in which numerous authorities are cited. Also note 75 on p. 51 of 39 Cyc. where many cases are cited declaring the doctrine that "Express trusts in personal property may be created by parol." See also Northrip v. Burge 164 S. W. p. 584, Podhaysky's estate, 115 N. W. Rep. 599. Clarke v. Callahan, 10 L. R. A. (NS) 616; Haxton v. McClaren, 31 N. E. p. 48. Perry on Trust Secs. 86-98. It is claimed that because Mr. Baile did not select fifteen thousand dollars of the securities from nineteen thousand four hundred dollars that the trust was never completed. We cannot agree with this construction of the trust agreement. This was merely a matter of detail which could not affect the trust which had already been established. This was left for the trustee to do, and certainly, it cannot be said that the trustee by some improper act or ommission upon his part could destroy the trust.

We might further state that the trust agreement contained nothing as to when or how the selection of these securities should be made, and that in the absence of such specifications the trustee would be allowed a reasonable time to make the selection, and if he did not make the selection within a reasonable time, Ogden could have required him to do so. But we find from the testimony there was no effort on the part of Ogden to require Baile to make the selection, and it is patent on its face that at the time the contract was made, the securities could not have been selected so as to give exactly fifteen thousand dollars to the trustee, and necessarily, Baile would have been required to wait until there was some change or alterations in the forms or amount of some of the securieies. Suffice it to say that Baile held nineteen thousand, four hundred dollars worth of security by and with the consent

of Ogden, and that out of the interest derived from fifteen thousand dollars worth of this security Baile was to pay Mrs. Carhart as her annuity twelve hundred dollars, and the balance of the interest belonged to Ogden, as well as the principal, subject, however, to the trust, but fifteen thousand dollars worth was to be held by Baile as trustee until the termination of the trust.

It is evident, as was said by the chancelor in his decree "That the creator of the trust, W. B. Ogden, endeavored to repudiate the same by legal action, and that it was necessary that J. C. Baile, the trustee, employ counsel to protect the same, and that the said counsel employed by the said J. C. Baile did effectually protect the same." In the 28 Am. & Eng. Ency. of Law (2nd Ed.) p. 1090, it is said that it is the duty of a trustee to assert and protect diligently and faithfully the interest of the beneficiary, and if in fulfilling the duty he becomes involved in any litigation, he will be allowed in his accounts a reasonable amount expended for legal advice, counsel fees and other expenses. See also Pomroy's Equity Jurispruddence (3rd Ed.) Sec. 1085; 39 Cyc. P. 339 and notes; Trustees v. Greenough, 105 U. S. 527; Mitau v. Rodden (Cal.) 6 L. R. A. (N. S.) P. 275; Griffin v. Pringle, 56 Ala. 486; Clark v. Anderson, 76 Ky. 111; Weigand v. Woerner, 134 S. W. 596; W. Texas Bk. & Tr. Co. v. Matlock, 172 S. W. p. 162; McLaughlin v. Wester R. Corp. 66 Mass. 131; Downing v. Marshall, 37 N. Y. 380; Mitchell v. Schultz, 8 Ohio 78; Abend v. End Fund Coms. decided by the Supreme Court of Ill. 50 N. E. Rep. 1052. Lewis Ex. v. Gaillard, et al., 70 Fla. P. 172.

There was some question as to whether or not the securities were properly in the hands of the trustee on account of the endorsement. The evidence in this case

shows that Mr. Baile acknowledged receipt of these papers from Mr. Ogden for a special purpose, and that purpose was to hold them in trust for the benefit of Mrs. Carhart. This being the case, it is immaterial as to how the notes came into the hands of the trustee, for the agreement of trust provides definitely what Mr. Baile was to do with the notes and how to finally account for them.

We therefore find no error in the chancellor's order in holding and decreeing that the trustee was entitled to a reasonable compensation for his attorneys fees, as well as for the reasonable and necessary costs disbursed.

The next question presented is the procedure on the part of the trustee in asking for the counsel fees and cost. This was done by a petition in the same proceeding setting up the different steps taken in the case to the date of the filing of the petition for counsel fees and cost. It is claimed that the chancellor had no jurisdiction to entertain this petition in the main suit, but that the trustee must recover his costs and fees out of the injunction bond. We cannot agree with counsel for the appellants that this procedure was erroneous. In the case of Lewis, et al., v Gaillard above cited, 70 Fla. 172, this Court had occasion to pass upon a similar question. In that case, which was one involving a trust estate, the parties attacked the trust estate. Geo. Lewis was the trustee of that estate. When the final decree was entered the Gaillards, et al., who had brought the suit, filed a petition in the same court and prayed for a decree adjudging to them out of said trust funds their cost and counsel fees in the litigation, basing their claim to such counsel fees upon the ground that the litigation instituted by them, resulted in direct and legal settling for the executor and trustee where and to whom the estate in his hands belonged. The trustee, Geo. Lewis, also applied by petition in the same cause, for an allowance

for his cost, expense, and counsel fees in defending the lit-
igation instituted against him as such executor and trus-
tee, same to be paid out of the funds of said estate in his
hands.   Testimony was taken as to what would be a rea-
sonable allowance for counsel fees therein, and on the
coming in of the report of the Master, the chancellor ren-
dered a decree adjudging to the complainants, the Gail-
lards, for their counsel fees, the sum of two thousand
five hundred dollars to be paid by the trustee out of the
trust funds, and allowed the same amount to the defend-
ant trustee out of the trust funds in his hands.   The trus-
tee, Geo. Lewis, and his co-defendants, appealed from this
order and decree of the chancellor, assigning the said fea-
ture of said decree, allowing counsel fees to the appellees
to be error.   This Court held that the order of the court
below should be reversed and it was reversed with direc-
tions to enter in its stead a decree disallowing any recov-
ery of counsel fee out of said trust fund to the Gaillards,
but allowed them only their taxable cost.   This Court
*allowed* the fee for the trustee's solicitor.   This was all
done in the same proceeding and upon petition in the
same manner as it was done in the present case.   In the
case of Trustees of the Internal Imp. Fund v. Chas. P.
Greenough, Adm., *supra,* which was a case that went up
from Florida to the Supreme Court of the United States,
the same procedure was had.   And it seems to be a case
where the only question involved was the question of
costs, expenses, and allowances, awarded to the com-
plainant below out of a trust fund under the control of
the court.   The principal suit was commenced in 1870 by
a bond-holder of the Florida R. R. Co. against the Trus-
tees of the Internal Improvement Fund of Florida.   It is
needless to give the facts of that case as it is cited merely
on the point of procedure in asking for counsel fees.   In

1875 the bond-holder who instituted the suit, filed a petition setting forth the advances and efforts that had been made by him, and prayed for an allowance out of the fund for his expenses and services. This petition was referred to a Master to take testimony. The Master referred to the expenses disbursed by the complainant in the cause and declared that they were necessary expenditures, being for fees of solicitor and counsel, cost of court, and sundry small incidental items, the whole amounting to thirty-four thousand one hundred ninety-two dollars and sixty-two cents. Also in that case, the proceedings before the Master were opposed, but on a hearing upon the report, and the evidence submitted therewith, the court confirmed it to the extent of twenty-seven thousand eight hundred thirty-five dollars and thirty-four cents; allowing the fees of the officers of the court, and those of the attorneys and solicitors employed in the case. We therefore conclude that there was no error in allowing the attorneys fee upon petition in this suit. The next question is one of the reasonableness of the attorneys fee allowed.

From the testimony of reputable attorneys, which we have read in the record, we are of the opinion that the chancellor was fully warranted in allowing the sum of three thousand dollars as counsel fees, in fact, we find no evidence contradicting the testimony offered by the petitioner, J. C. Baile, as to what would be a reasonable attorney's fee. This also disposes of the objections raised by counsel for the appellee at the time of the taking of the testimony. The 14th, 15th and 16th assignments of error complained that the court erred in decreeing the defendant a lien on the securities held by the receiver for the payment of the three thousand dollars solicitor's fee, and for the order of sale to pay same. There was no error in this, for it was proper that the chancellor, after

giving the complainant an opportunity to pay this fee and cost, to provide in the decree that the receiver should hold the trust securities, and declare a lien on same for the payment of the counsel fee and cost. It was the right of the court to protect the trustee in the collection of his counsel fees, and to provide for the enforcement of its decree.

Finding no reversible error, it is ordered that the decree of the lower court appealed from be affirmed at the cost of the appellants.

TAYLOR, SHACKLEFORD, WHITFIELD and ELLIS, JJ., concur.

BROWNE, C. J., disqualified.