SHANNON, Judge.
The appellant, plaintiff below, was guardian of the property of Jane T. Dunn, incompetent, in a complaint for a declaratory decree seeking a determination of the rights, liabilities, and duties of itself as guardian, and of the defendant under an agreement entered into by the defendant and Alice D. Elstun, the sister of plaintiffs ward. The chancellor having entered his final decree and the same having been adverse to the plaintiff, this appeal follows.
Alice D. Elstun, now deceased, sister of Jane T. Dunn, incompetent, entered into a contract with the defendant under the *199 terms of which it was provided in part as follows:
“ * * * Whereas, the second party (Alice D. Elstun) is the owner of fifty (SO) One Thousand ($1000.00) Dollar City of St. Petersburg Municipal Bonds, and
“Whereas, the second party (Alice D. Elstun) has two sisters, Mary Dunn and Jane Dunn, whose present residence is 1730-7th Street North, St. Petersburg, Florida, in whose security and welfare the second party is vitally interested,
*****
“1. The first party agrees that it shall, commencing the first day of April, 1952, pay monthly the sum of Sixty ($65.00) Five Dollars to Mary Dunn and Jane Dunn, sisters of the second party, or the survivor thereof, as long as they or the survivor shall live, said amount to be paid at the residence of said Mary Dunn and Jane Dunn.
“2. The first party agrees in addition to furnish at any time after the execution of these presents whatever medical, hospital, spiritual or physical comfort and aid may be necessary for the physical and mental well-being of the sisters of the second party, to wit: Mary Dunn and Jane Dunn, or the survivor thereof.
“3. The first party agrees that should the present address of Mary Dunn and Jane Dunn, to-wit: 1730-7th Street North, St. Petersburg, Florida, cease to be available to said Mary Dunn and Jane Dunn, or the survivor, that said first party shall provide adequate and suitable space in the building known as the Mayflower for the residence of said Mary Dunn and Jane Dunn, or the survivor. However, if this should become necessary, the payments provided for in the Paragraph numbered 1. of this agreement shall be reduced to the amount of Twenty-Five ($25.00) Dollars per month.
“4. In addition to the amounts provided herein to be paid to said Mary Dunn and Jane Dunn, or the survivor thereof, it shall be within the discretion of the Superintendent of the said St. Anthony’s Hospital, Inc., to from time to time make such other payments to said Mary Dunn and Jane Dunn, or the survivor thereof, as may be necessary for their or her protection, welfare and comfort. * * * ”
The plaintiff was appointed guardian of the property of Jane T. Dunn, incompetent, by an order of the court of the County Judge, Pinellas County, Florida, and, as such, brought this suit. The suit is for a declaratory decree and prays that the rights, liabilities, duties, responsibilities and legal relations of itself in its capacity as guardian be determined by the decree.
The complaint alleges that the plaintiff has been required to pay in excess of $10,000 for the physical comfort and aid necessary for its ward’s physical well-being, which expenditures include items such as food, clothing, housekeeper and companion’s services, maid’s services, yardman, etc. It also appears that the defendant has refused to pay for these items and has refused to reimburse the plaintiff for the payments thus made. The defendant in its answer admits that it has refused to pay such amounts of money demanded to be paid by plaintiff, but alleges that it refused said payments on the theory that it was not obligated to make same under the terms of the contract and takes the position that it is only obligated to make the monthly payment of $65 in accordance with the agreement to provide certain medical, hospital, spiritual or physical comfort and aid, as provided in Paragraph 2 of said contract. The chancellor below took evidence upon the issue joined, such evidence included the attorney who drew the contract and of another witness that we assume is the agent of the plaintiff. The chancellor be- ■ *200 low from the pleadings and the testimony-entered a final decree providing in part as follows:
“This Court further finds that the assets of the ward, Jane T. Dunn, incompetent, together with the income of said ward, are sufficient at the present time to support said ward and to bear all of her medical, hospital, nursing and dental expenses, and further finds that under Paragraph 2 of said agreement, particularly referring to the words ‘may be necessary,’ the Plaintiff is obligated to pay any and all hospital, medical, nursing and dental hills of said ward, past, present and future, so long as said assets and income are sufficient for this purpose. It is, therefore,
“Ordered, Adjudged and Decreed that under Paragraph 1 of said agreement, St. Anthony’s Hospital, Inc., •shall pay monthly the sum of $65.00 to Jane T. Dunn so long as she may live, subject to the provisions of Paragraph 3 of the agreement. It is further
“Ordered, Adjudged and Decreed that under the provisions of paragraph 2 of said agreement, St. Anthony’s Hospital, Inc., shall not be obligated to furnish any hospital, medical, nursing or dental aid, or the funds to furnish same, so long as the assets of Jane T. Dunn, the ward of the plaintiff, together with the income of said ward, are sufficient to bear those expenses. It is further * * * ”
The plaintiff has raised three points which, in substance, are: one, the defendant was under obligation to furnish any hospital, medical, nursing or dental aid or support to Jane T. Dunn, incompetent, ward of The Florida National Bank of Jacksonville, as guardian of the property of said ward, irrespective of whether said ward had sufficient assets to pay such charges; two, whether or not the trial court erred by placing undue emphasis on the phrase “ * * * as may be necessary * * * ” and by failing to consider the effect of the phrase “ * * * to furnish at any time after the execution of these presents”; and three, whether the chancellor erred in excluding testimony pertaining to the placement of plaintiff’s ward in some place other than the Mayflower (a building owned by the defendant). Points one and two are necessarily dependent upon each other, and so they will be discussed herein jointly.
For a proper construction of this contract the plaintiff urges that an examination of the entire instrument shows it creates a trust, and cites 54 A.J., Trusts, Sec. 64, p. 71; Voorhies v. Blood, 1937, 127 Fla. 337, 173 So. 705; Reid v. Barry, 1927, 93 Fla. 849, 112 So. 846; and Bay Biscayne Company v. Baile, 1917, 73 Fla. 1120, 75 So. 860, or if it did not create a trust it did create a fiduciary relationship and cites Metcalf v. Leedy, Wheeler & Co., 1939, 140 Fla. 149, 191 So. 690 and Quinn v. Phipps, 1927, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173. The principles of what does and what does not create a fiduciary relationship are set out. The appellant further urges that whether this agreement is construed as creating a trust, a simple fiduciary relationship, or only a gift burdened with conditions, there still should have been neither evidence taken, nor consideration given to the effect of any independent assets of the ward. From the evidence it will be seen that the present inventory of the ward’s assets amounted to $22,055.16 and her income was $6,428.90. Going to make up the ward’s income was a $65 per month payment made to her each month by the defendant and a civil service pension. If we accept the plaintiff’s construction of the agreement then, and in that event, the evidence concerning the ward’s income and assets is immaterial. In support of this position plaintiff cites us several cases involving gifts or bequests of “support and maintenance”, most of them going to the general proposition that an absolute gift of “support” is a valid gift, the annual value of which can be deter *201 mined by simple arithmetical calculations, and which is not impliedly conditioned on the non-existence of the beneficiary’s independent assets. Typical of these cases is In re Gatehouse’s Will, 149 Misc. 648, 267 N.Y.S. 808, 819, where it is said:
“A gift of ‘support and maintenance,’ if absolute, is therefore merely a gift of a sum of money, the amount of which is ascertainable by a calculation of the component effect of extraneous circumstances and contributing factors, and differs neither in nature nor in kind from an ordinary gift of income; the sole diversity arising from the difference of the factors which unite in determining the particular number of dollars which the donee thereof is entitled to receive.
“It follows, therefore, that when an absolute gift is made of the sum which is compounded from the elements going into the computation of ‘support and maintenance,’ it assumes the nature of any other absolute gift and is not subject to defeat by an extraneous condition. * * * ”
However, it can be readily seen that the principle therein discussed is qualified by the words “if absolute,” and a quotation in the plaintiff’s brief which approaches the question under consideration more closely, at least by analogy, is one from In re Martin’s Will, 1936, 269 N.Y. 305, 199 N.E. 491, 494, where the following distinction is drawn:
“The primary question in this class of cases always is, Does the will constitute an absolute gift of support and maintenance which it makes a charge upon the income from the estate and upon principal? If so, then the private income of the beneficiary cannot be considered. If, however, the gift is of income coupled with a provision that the principal may be invaded in case of need, the private income of the beneficiary must be considered in determining whether such need exists.”
By analogy we have quite a similar situation in the present case, i. e., did the; parties intend the defendant to be absolutely responsible for furnishing the ward “whatever medical, hospital, spiritual or physical comfort and aid may be necessary,” or are the words “may be necessary” equivalent to “in case of need” in the Martin’s Will case, supra? j
This question leads us to the plaintiff’s argument that the chancellor below erred by putting undue emphasis on the words “may be necessary”. It is contended that the paragraph in dispute should be considered in its entirety, and that the words “at any time” have the effect of making the defendant immediately liable for the services mentioned. However, it would seem that these words merely described the time defendant’s liability attached, and did not affect the question previously raised as to whether that liability is absolute or conditioned on the ward’s lack of independent assets.
The attorney who drew up the contract testified in the case, and his testimony was not objected to by the plaintiff. At one point in his testimony he stated, among other things, the following:
“Q. Along the lines you have just stated to the Court and with respect to this agreement and with further regard to your numerous conferences with both parties to the agreement, do you know whether or not it was the intention of the parties that the St. Anthony’s Hospital would support them in full? A. That was not the intention.”
To come back to the agreement, the defendant in paragraph 2 promised to “ * * * furnish at any time after the execution of these presents whatever medical, hospital, spiritual or physical comfort and aid may be necessary for the physical and mental well-being of the sisters of the second party, * * * ” and in the fourth paragraph of said agreement, it was provided:
*202 “In addition to the amounts provided herein to be paid to said * * * Jane Dunn, * * * it shall be within the discretion of the Superintendent of the said St. Anthony’s Hospital, Inc., to from time to time make such other payments to said * * * Jane Dunn, * * * as may be necessary for * * * her protection, welfare and comfort.”
The agreement also provided that the ward was to receive $65 per month from the date.
It seems to us, and we so conclude, that if the agreement, as the plaintiff urges, placed an obligation upon the defendant to begin paying “at once or immediately” the various expenses of the ward, it would have been a simple matter to have so said in the agreement. The use of the words “at any time after the execution of these presents” and “may be necessary” would not have been used as a contrary intention upon the one sought. This being so the chancellor below committed no error in receiving evidence as to the value of the ward’s assets as well as her income.
We hold that the agreement, even though ambiguous, although we do not so consider it, is controlled by Holmes v. Kilgore, 1925, 89 Fla. 194, 103 So. 825, 827, in which the court stated:
“It cannot be said that the contract in question is not ambiguous, but the theory of the law is against the destruction of contracts because of ambiguity, and we think this one may be construed to effectuate the reasonable intention of the parties. If no competent direct testimony is adduced to shed light on this intention, the court must then resort to the plain terms of the entire instrument, and in this connection he will be guided by the nature, subject-matter, and purpose of the contract. Such preliminary negotiations leading to it as can be ascertained, the surrounding circumstances supporting it, and the language in which it is expressed, may be considered.”
In St. Lucie County Bank & Trust Co. v. Aylin, 1927, 94 Fla. 528, 114 So. 438, 441, the court states:
“ * * In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion, and apparent object of the parties, to determine the meaning and intent of the language employed. Indeed, the great object, and practically the only foundation, of rules for the construction of contracts, is to arrive at the intention of the parties. This is a most conspicuous and far-reaching rule, and involves the nature of the instrument, the condition of the parties, and the objects which they had in view; and, when the intent is thus ascertained, it is to be effectuated, unless forbidden by law. “Contracts are not to be interpreted by giving a strict and rigid meaning to general words or expressions without regard to the surrounding circumstances or the apparent purpose which the parties sought to accomplish.” ’ ”
Our conclusion, as had been intimated, is that the contract herein involved is not ambiguous, and if it is, the testimony of the attorney who listened to the negotiations for the parties and finally drew the contract could be taken into account by the chancellor below. It was not error for the chancellor below to take into consideration the testimony of the attorney who was with both of the parties to the contract, heard the negotiations, and drafted the same. In view of the fact that his testimony supports the construction of the agreement found by the chancellor below, this construction of the said agreement is affirmed by this court.
On the third point the plaintiff in his declaratory complaint contests an alleged *203 claim of the defendant that the said Jane T. Dunn may be placed in a rest home other than the Mayflower at the plaintiff's expense, and upon such placement said defendant’s obligations under paragraphs 2 and 4 of the contract with Alice D. Elstun shall cease. This is not shown by the answer of the defendant or by the testimony. In the examination of Claire Bacon she was asked the following questions and gave the following answers:
“Q. Where is your Ward, Jane T. Dunn, at this time? A. St. Anthony’s Hospital. 1
“Q. How long has your Ward been in St. Anthony’s? A. Since June 15, 1957.
“Q. Prior to that time, where did your Ward reside? A. In a residence at 1730-7th Street North, St. Peters-burg, Florida.
“Q. Will you explain to the Court who owns that residence or how it was made available to your Ward? A. The residence was owned by one Vol--ney Eiston, (sic) who was a brother-in-law,'by marriage to Alice Eiston, (sic) the sister. The home was made available to our Ward and her sister, Mary Dunn, as long as they lived, rent free, provided they maintained it in good condition as far as the upkeep of the yard and so forth, and the furnishings of the property belong to our Ward.
“Q. Does the Ward own any interest in that property? A. Not at all, except the furniture and furnishings therein, minus the kitchen equipment.
“Q. Is this property, so far as you know, still available for the use of your Ward? A. Yes, sir.”
The defendant contends, and we agree, that the question is moot. There is no showing nor proffer to show that the defendant had ever contemplated, nor did any of the officers ever state, that the ward should live in any house or building not contemplated by the agreement. Irrespective of Section 87.03, Fla.Stat.1957, F.S.A., which provides:
“A contract may be construed either before or after there has been a breach thereof.”
We have concluded that the agreement is not ambiguous and the defendant had not contemplated any change in regard to the ward’s residence. It would be, under these circumstances, immaterial that the chancellor below had not decreed specifically the ward’s rights in regard thereto under the decree.
Affirmed.
KANNER, C. J., and ALLEN, J., concur.